## William M. Marshall vs. John Haney.

Patent ambiguities appear on the face of the writing itself, and, as a general rule, cannot be explained or removed by extrinsic evidence; in such cases the court is to ascertain the meaning of the words actually employed, not what the parties may have secretly intended as contradistinguished from what their words import.

Defendant covenanted to convey to plaintiff " three hundred and twenty acres of unimproved land in Clarke county, Missouri, being the same land which was purchased from government by Z. and R. and by said Z. and R. sold to defendant." Held :

That one of the ambiguities in this covenant, if any, is, whether the land to be thereby conveyed was to consist of land conveyed to defendant by Z. and R. *jointly*, or by each *separately;* but it cannot be shown by parol that it was *intended* to be land conveyed by Z. *alone* or R. *alone*, for this would be to vary or contradict the written instrument.

Where the description in a written instrument, of the person, thing, or place, intended, is equally applicable to each of several subjects, there is a *latent ambiguity*, and extrinsic evidence is admissible to show which of these several subjects was meant.

Latent ambiguities are first created by extrinsic evidence, which afterwards renders extrinsic evidence necessary to explain or reconcile them.

The *bona fide* acceptance by plaintiff of a deed from defendant, though not embracing the identical lands described in the covenant, operates a full discharge of the latter, and a subsequent conveyance by plaintiff of the same lands embraced in the deed is evidence of such acceptance.

In a suit for a breach of this covenant in not conveying the land, its value at the time of *the breach* constitutes the measure of damages, and evidence of what its value was at the time of the execution of *the covenant* is irrelevant and inadmissible.

After the plaintiff had accepted the deed from defendant for the land *in separate parcels*, it was too late for him to attempt to show that the covenant contemplated land *in one body.*

Evidence offered for a particular purpose may be properly rejected, though admissible generally or for some other purpose.

Declarations of defendant that the land was to lie in one body, made *before* his deed to plaintiff was executed, are not, *per se*, evidence of fraud on his part, or mistake in the acceptance of the deed by the plaintiff, unless accompanied by a proffer to follow them up with other facts connected with them, from which the jury could rationally infer the fraud or mistake.

But such declarations, if made *after* the deed was executed, without any qualifying or explanatory remarks showing that plaintiff had waived his right to have the land in one body, would be evidence, *per se*, tending to show the alleged fraud or mistake.

Evidence relative to the issue is admissible, though it is insufficient unless followed and supported by other evidence.

The declarations of an agent are not admissible to bind his principal, under any circumstances, until the agency is first clearly established.

Where part of the evidence in an exception is admissible, and part not, and the rejection of the whole is asked for, there is no error in the court's refusal to sustain such application.

Any instruction which may be asked for by counsel, however correct it may be in the abstract, should be rejected by the court, if unsupported by evidence properly in the cause.

If one or more of several propositions contained in the same prayer be incorrect, though the remainder be right, there is no error in the refusal to grant the prayer in its entirety.

APPEAL from the Circuit Court for Washington county.

This was an action of *covenant,* by the appellee against the appellant, upon the agreement set out in the opinion of this court. The first appeal in this case is reported in 9 *Gill,* 251, and this trial was upon a *procedendo* ordered upon that appeal. The pleadings were the same as in the former trial, with the exception that defendant, instead of pleading simply general performance, pleaded several pleas, traversing the allegations of the particular breaches alleged in the declaration.

*1st Exception.* The plaintiff offered the agreement sued upon, dated 23rd of December 1841, and a deed by him to defendant of the Allegany lands, dated 30th of March 1844, in performance of his part of the covenant. Defendant then offered:—1st, a deed from Samuel Zeller to himself, dated 10th of September 1842, for three hundred and twenty acres of land in Clarke county, Missouri; 2nd, a deed from John A. Rench to himself, dated 7th of March 1842, for another parcel of land lying in the same county; 3rd, a deed from himself and wife to the plaintiff, dated 14th of September 1844, conveying three hundred and twenty acres of said land, consisting in part of the land conveyed to him by Zeller, and partly of that conveyed by Rench, the same *not being in one body, but in separate parcels;* 4th, a deed from plaintiff and wife, dated 12th of March 1845, conveying *this same land* to Ezekiel Chaney. The description of the land in these deeds

was by sections, townships and ranges. All these papers were in the handwriting of D. G. Yost. Some testimony was then offered as to the value of the Missouri land in 1845. The defendant then further to show that the valuation of the lands in the agreement was merely conventional, and not its actual money value, offered to prove that in 1840 and 1841, before the date of the agreement, plaintiff offered to sell *his* land in Washington county at $27.50 and $30 per acre. The court, (PERRY, J.,) rejected this testimony as inadmissible for the purpose aforesaid, and defendant excepted.

*2nd Exception.* The plaintiff then offered to prove by Ezekiel Chaney the admissions of defendant, that the land he had contracted to sell to plaintiff consisted of that purchased by him from Zeller alone, and did not comprise any of that purchased from Rench. To this defendant objected, but the court overruled his objection, and he excepted. This witness also proved, that in March 1845 he was in treaty with plaintiff for the land the latter was to get from defendant, but after the bargain for the same having learned that it was not the land he bargained for, and was no part of that sold by Zeller alone to defendant, he and plaintiff, by mutual consent, abandoned their contract, and the deed from plaintiff to him was never delivered, and he never saw or knew anything about it.

*3rd Exception.* The plaintiff then offered to prove by Jervis Spencer, Esq., that some years before this suit defendant told witness the land plaintiff was to get, according to their agreement, was all in one body, and that he had sold two hundred acres of it to Zeller, and when he did so, Zeller told him it was the land plaintiff was to get; that the land he afterwards proposed to give plaintiff was in separate parcels, and the latter had refused to have it; that defendant said plaintiff · might as well take it, for it was nearly as good as the other, and he would not recover much from him any how; that defendant excused himself by saying he had been deceived by Kinkle, but did not say that he had used any false representations or fraud; that the agreement sued on was delivered to witness by said Kinkle, and that in searching for it among

the papers of Yost, who was defendant's attorney, witness found the deeds from defendant to plaintiff, and from the latter to Chaney, both in the same envelope. To which testimony, so far as it tends to prove by the declarations of defendant, that by the agreement plaintiff was to have his land all in one body, and that it was the land Zeller conveyed to defendant, the latter objected, on the ground that it was adding to and contradicting the written agreement by parol evidence. The court overruled this objection and admitted the testimony, and to this ruling defendant excepted.

*4th Exception.* The plaintiff further proved that defendant, in 1843 or 1844, stated to the witnesses that the Missouri land was worth $6 per acre. The witness also detailed the declarations to them of Kinkle, acting, as they supposed, as defendant's agent for the sale of his farm in Washington county partly for cash and partly for Missouri land, to the effect that the value of the Missouri lands was $6 per acre. To all which testimony defendant objected, and this objection being overruled by the court, he excepted.

*5th Exception.* In this exception defendant, upon all the testimony, offered two prayers, in substance as follows:— 1st. If plaintiff accepted the deed of the 14th of September 1844, from defendant and wife, and this deed was for land in Clarke county, Missouri, and part of that purchased from government by Zeller and Rench, and by them conveyed to defendant, then such acceptance is a discharge of defendant's covenant to convey, and plaintiff is estopped to say, he, at the time of the acceptance, was under the impression and belief the lands so conveyed were other and different portions of the land so purchased by Rench and Zeller, or were exclusively of the lands purchased by Zeller, or that they lay all in a body and not in separate parcels. 2nd. If plaintiff accepted said deed, intending to act upon it, and was in treaty for the sale of the same land to Chaney, it was too late after such acceptance, and after months had elapsed, and his failure to consummate his sale to Chaney, to throw up said deed and resort to his covenant to convey, whether he knew what lands

were so conveyed to him or not, provided they were parts and parcels of the land so conveyed by Zeller and Rench to defendant. These prayers the court rejected and defendant excepted.

*6th Exception.* The plaintiff then offered two prayers:— 1st. If defendant, at the time of the execution of his deed to plaintiff, knew it did not embrace the land sold by him to plaintiff, but other and different land, and this fact was not known to plaintiff, then, though he accepted the deed, such acceptance would not make it binding on the plaintiff, nor be a fulfilment of defendant's covenant to convey, provided plaintiff abandoned said deed after he discovered said facts. 2nd. If the deed from plaintiff to Chaney was never delivered, nor tendered to, nor was in his possession, and as soon as he and plaintiff discovered it did not embrace the land they had bargained for, both immediately abandoned the contract and deeds, and if the land for which they bargained embraced the two hundred acres which defendant said was part of the land he had sold to plaintiff under the agreement in suit, but which he afterwards sold to Zeller, then the execution of said deed from plaintiff to Chaney is no evidence the latter accepted said deed from defendant to him, provided plaintiff, at the time he made said contract of sale and executed said deed to Chaney, was acting under a mistaken belief on his part that the land described in it was the land he had actually purchased from defendant, when in fact it was other and different land. The court granted these prayers and defendant excepted.

The verdict was for the plaintiff, with $2340.80 damages. The defendant moved for a new trial, upon the grounds that the verdict was against evidence and law, the damages were excessive, and he had discovered new evidence since the trial. This motion the court overruled and gave judgment according to the verdict, and defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*J. Dixon Roman* and *Wm. Price* for the appellant. The agreement in this case has on its face a perfect description of the land. When a latent ambiguity comes from extrinsic evidence, it must be explained in the same mode, and when such evidence is introduced it is for the purpose of *pointing* the instrument to the object described in it. But here the attempt is to alter the agreement from its foundation, for they propose to show by parol that the land meant was that sold to Marshall by Zeller alone, whereas the contract says it was to be land sold to him by *Rench* and Zeller. In other words, the plaintiff undertakes to show by parol that the land in the minds of the parties when they made the contract was not that expressed in it. All the authorities are clear that this cannot be done. 1 *Greenlf. on Ev.*, secs. 275 *to* 277, *and* 280 *to* 282. 15 *Mees. and Wels.*, 561, *Smith vs. Jeffryes.* 1 *Mass.*, 69, *Payne vs. McInteer.* 7 *Do.*, 518, *Hunt vs. Adams.* 8 *Do.*, 146, *Townsend vs. Weld.* 10 *Do.*, 459, *Leland vs. Stone.* 1 *H. & G.*, 438, *Thomas vs. Turvey.* 7 *G. & J.*, 227, *Creswell vs. Lawson.* 9 *Gill*, 205, 211, *Taney vs. Bachtell.* 9 *Searg. and Rawle*, 47, *Crotzer vs. Russell.* Upon these authorities we insist, the court was wrong in its rulings upon the *first*, *second* and *third* exceptions. The declarations detailed in the *fourth* exception were clearly inadmissible, as there was no proof that he was ever the agent of Marshall. *Dunlap's Paley on Agency*, 256, 257, 269, 309. *Story on Agency*, secs. 127, 134, *to* 139. 5 *Car. and Payne*, 346, and 8 *Bing.*, 451, *Garth vs. Howard.*

2nd. All the questions arising upon the prayers in this case are *conclusively* settled by the decision of this court on the former appeal, in 9 *Gill*, 253. There is no evidence in the record that the acceptance of the deed by the plaintiff was the result of fraud, misrepresentation or mistake, and the qualification in this respect to the general rule laid down by the court in that case is not applicable, and hence the prayers on the part of the defendant are very properly silent in this particular.

*Jervis Spencer* for the appellee. There is no *patent* ambiguity in the agreement, but there is a *latent* one, which consists in this: seven hundred acres of land are sold to Marshall by Zeller and Rench, three hundred by one and four hundred by the other; now out of which parcel is the three hundred and twenty mentioned in the agreement to come? Whether it was to come from one parcel or the other, or to lie all in one body or in separate tracts, we insist is a *latent* ambiguity which we can explain by parol testimony. 1 *Greenlf. on Ev.*, secs. 277, 285, 287 *to* 289. 1 *Philip's Ev.*, 531 *to* 534. 4 *Do.*, 1362, *note* 939, *and* 1399, 1440, *note* 957. 2 *Gill*, 11, *Isaac and Wife, vs. Clarke.* 2 *Haywood*, 32, *Hatch vs. Hatch.* 7 *Halsted*, 313, *Den vs. Cubberly.* 1 *Mason*, 11, *Peisch vs. Dickson.* 7 *J. J. Marshall*, 79, *Wilson vs. Robertson.* 14 *Maine*, 233, *Patrick vs. Grant.* 1 *Sm. and Mar.*, 494, *Doe vs. Jackson.* 4 *Blackf.*, 374, *Harris vs. Doe.* 2 *Richardson* 377, *Elfe vs. Gadsden.* 2 *Ves., Sen.*, 216, *Hampshire vs. Pierce.* 1 *Bay*, 247, *White vs. Eagan.* 2 *Do.*, 539, *Middleton vs. Perry.* 3 *Binney*, 587, *Dinkle vs. Marshall.* 2 *Seargt. and Rawle*, 84, *Richardson vs. Stewart.* 8 *Johns.*, 116, *Cole vs. Wendel.* 4 *Day*, 265, *Doolittle vs. Bleakley.* Again, we could show by parol an *election* of the three hundred and twenty acres mentioned in the agreement, and that we *elected* to take land lying all in one body. 4 *Philip's Ev.*, 1383, *note* 947. 2 *H. & J.*, 505. *Hunt vs. Gist.* 1 *H. & G.*, 438, *Thomas vs. Turvey.* 7 *G. & J.*, 245, *Creswell vs. Lawson.* 24 *Eng. C. L. Rep.*, 166, *Richardson vs. Watson.* 1 *Whart.*, 317, *Krider vs. Lafferty.* We insist, therefore, that the ruling of the court below upon the first three exceptions was correct. As to the fourth exception: the admissions of the defendant as to the value of the land at the time of the breach of the covenant, were clearly admissible to show the measure of damages, and the objection being to the whole testimony, the court were right if any part of it was admissible. 3 *Gill*, 198, *Budd vs. Brooke.* 3 *Md. Rep.*, 146, *Gaither vs. Martin.*

2nd. The ruling of the court below upon all the prayers in the case was also correct. The opinion upon the former

appeal in 9 *Gill*, 251, in stating the law that the acceptance of the deed by plaintiff was a discharge of the defendant's covenant to convey, adds an *important* qualification, that such acceptance will discharge the covenant "*in the absence of evidence of mistake, misrepresentation, or fraud.*" Our prayers leave the question of fraud in this respect to the jury, and they were therefore properly granted.

MASON, J., delivered the opinion of this court.

This case has already been before the Court of Appeals, and is reported in 9 *Gill*, 250. The principles settled by that decision, are to govern the case as we now find it, so far as they are applicable.

We shall proceed to express our views upon the general principles of law which are to control our decision, and will then apply them to the several questions as they are presented by the exceptions, and in the order in which they arise.

Our first duty will be to interpret the covenant, the alleged breach of which, forms the basis of the present action. That part of the covenant with which only we have to do, is in these words. "Marshall agrees and binds himself to convey to the said Haney, his heirs and assigns, in fee-simple, by a good and sufficient deed of bargain and sale, clear of all incumbrances, three hundred and twenty acres of unimproved land situate in Claike county, Missouri, being the same land which was purchased from government by a certain Samuel Zeller and John A. Rench, and by said Rench and Zeller sold to said Marshall; said 320 acres of land in Missouri, is valued at $2100, and said Haney agrees to receive said 320 acres of Missouri land, in part payment of the said 125 acres of land," &c.

It is contended that this covenant presents a case of ambiguity, which can be legitimately and only explained by the aid of oral or extrinsic testimony.

Patent ambiguities exist or appear on the face of the writing itself, and as a general rule cannot be explained or removed by extrinsic evidence. 4 *Phil. on Evidence*, *(Cowen's Ed.,)*

1358 *note* 938. *Peisch vs. Dickson,* 1 *Mason,* 9. In such cases it is the duty of the court to ascertain, not what the parties may have secretly intended as contradistinguished from what their words import, but what is the meaning of the words actually employed. *Beaumont vs. Field,* 2 *Chitty's Rep.,* 275. *Doe vs. Gwillim,* 5 *Barn. and Adol.,* 122, 129.

If there be ambiguities (whether latent or patent) in this covenant, one of them would consist in the doubt, whether the land to be conveyed by Marshall to Haney, was conveyed to the former by Zeller and Rench *jointly,* or whether it was to consist of land conveyed by each *separately.* If extrinsic evidence is admissible at all to explain this doubt, it must of necessity be directed to that ambiguity alone; that *is* whether the land had been separately or jointly conveyed by Zeller and Rench. But it would not be competent, clearly, under any power to explain ambiguities in written instruments, for either party to show in this case, by parol evidence, that the land intended to be embraced in the covenant, was land conveyed by Zeller *alone,* or by Rench *alone.* Surely the covenant is not silent or ambiguous on this point, and to admit such testimony would be virtually to make a new contract, and thus violate the well established doctrine that a written instrument cannot be varied or contradicted by parol or extrinsic evidence. Any attempt by Marshall to convey land which he had received from either Zeller or Rench *alone,* would be in fact a breach of the covenant, and Haney would not have been bound to accept such a deed.

If there be no such ambiguity to explain, is there any other latent ambiguity which needs explanation by parol evidence?

Where the description contained in a written contract or other instrument, of the person, thing, or place intended, is applicable with equal certainty to each of several subjects, this would constitute a *latent ambiguity,* and extrinsic evidence is admissible to show, which of those several subjects was meant by the party or parties to the instrument of writing. *Miller vs. Travers,* 8 *Bing.,* 244. *Gord vs. Needs,* 2 *Mees. & Wels.,* 129. Latent ambiguities are first created by extrinsic

evidence, which afterwards renders extrinsic evidence neces-- sary to explain or reconcile them. For example, if A make a devise of a particular house to his cousin B, there would be no difficulty, upon its face, in construing such a will. But if it be shown *aliunde*, that A, has two cousins named B, extrinsic evidence must be given to show which of the two was intended. So in the case now under review, it is said that a latent ambiguity exists, which extrinsic evidence can disclose, and afterwards explain : and that ambiguity is said to consist in this, that *particular* lands conveyed by Zeller and Rench to Marshall, were by the latter to be conveyed to Haney, that those lands were to lie in one body, and that it was legitimate for the plaintiff to show which particular lands he was to receive.

These propositions might involve questions of very diffi- cult solution, did not the decision in the former case come to our aid, and relieve us from the necessity of determining them.

Deeds from Zeller and Rench to the defendant, a deed from the defendant to the plaintiff, embracing part of the land received from Zeller and Rench, in separate tracts, and also a deed from Haney to Chaney, for the identical lands which Marshall had conveyed to Haney, are spread out in this record. The deed from Marshall to Haney, if accepted *bona fide* by the latter, would operate as a full discharge of the covenant of Marshall. The subsequent conveyance by Haney to Cha- ney, of the identical lands conveyed by Marshall, is evidence that the defendant's deed was accepted by Haney ; and whether Mr. Yost, in whose possession this deed was found, was plaintiff's or defendant's attorney, it matters not, the deed to Chaney constitutes the evidence of Haney's acceptance of Marshall's deed.

This court have said on the former trial, that although the lands embraced in this deed, were not the identical lands named and described in the agreement, yet in the absence of evidence of mistake, misrepresentation or fraud, if Haney accepted the deed under the covenant, it discharged it.   9

*Gill,* 259.   See also *Wesley vs. Thomas,* 6 *Har. and Johns.,* 29.

This view shuts out all questions about *ambiguities, election,* and the like.   If the deed was accepted under the circumstances above enumerated, the lands embraced in it are to be considered as the identical lands mentioned in the written agreement, together with all the parol explanations or additions which might by possibility be made to it.

One other principle decided on the former trial applies to the present record, and that is, in the present suit for the breach of the covenant in not conveying the Missouri lands, the time at which the breach occurred, was the period at which the value of the lands should be estimated, in assessing the damages.

· With these general views to guide us, we will proceed to dispose of the several exceptions.

The first exception relates to the admissibility of the defendant's testimony, offered for the purpose of showing that the valuation placed upon the lands by the parties to the covenant at the time of its execution, was merely conventional, and formed no just standard of their real value.

Apart from the doubt which we entertain, whether the party would be permitted thus to qualify, if not to contradict his covenant, we cannot discover the relevancy of this evidence to any issue in the cause.   The alleged breach of the covenant consists of the non-conveyance by the defendant of the Missouri lands, and the Court of Appeals have said, the damages for not doing so, would be the value of the lands at the time of the breach of the covenant.   As a consequence the value of the lands, whether in Washington county or Missouri, at the time of the execution of the covenant, could have no influence upon the jury in assessing the damages. The covenant was entered into in 1841, and its alleged breach took place in 1844, when the deeds between Marshall and Haney were executed, and it matters not how much the land in the mean time had increased or depreciated, its value at the latter period, was to constitute the measure of damages in a suit by either party.

For the reasons mentioned we think the testimony was properly rejected, and we affirm the ruling in this exception.

For the reasons we have already expressed, it will be readily seen that Chaney's testimony, or so much of it as was objected to, as set out in the second exception, was inadmissible, and the court below was in error in receiving it. The attempt to show by Marshall's admissions that the land Haney was to get consisted of the land the defendant had purchased from Zeller *alone*, was to contradict the express terms of the written agreement, which provided that the land was to consist of what had been purchased from Zeller *and Rench*.

The third exception presents the question of the admissibility of the testimony of Jervis Spencer, Esq. It does not appear from the record specifically, for what purpose this testimony was offered. If intended to show, as a part of the agreement between Marshall and Haney, that the land to be conveyed by the former was *to lie in one body*, it was inadmissible. After Haney had accepted the deed from Marshall for the land in *separate parcels*, it was too late for him to attempt to show, that the covenant contemplated land *in one body*. Evidence, however, offered for a particular purpose, may be properly rejected, though admissible generally, or for some other purpose. *Goodhund vs. Benton*, 6 *Gill and Johns.*, 481.

If the declarations of the defendant as proved by this witness, were offered to establish fraud on his part, or mistake in the acceptance of the deed by the appellee, and were made before his deed to Haney was executed, they were not, *per se*, evidence, and therefore inadmissible, unless accompanied by a proffer to follow them up with other facts, connected with those admissions, from which the jury could rationally infer the fraud or mistake intended to be established. Whatever may have been the previous understanding of these parties as to the lands being in one body, if the plaintiff afterwards accepted the deed for them in separate tracts, it was virtually a waiver of his right to insist upon their being in one body, and hence the isolated declarations of the defendant in question, made before the deed, are rendered wholly immaterial.

"It is a well settled rule of evidence," say this court, in *Davis vs. Calvert*, 5 *Gill and Johns.*, 304, "that remote and collateral facts and circumstances, not relevant to the issue to be tried, are inadmissible in evidence ;" and they further add, "It is sometimes difficult to ascertain whether a particular fact offered in evidence is connected with the issue, and will or will not, become material in the progress of the investigation. In such cases, the court not clearly seeing that it is wholly foreign and irrelevant to the issue, and cannot be connected with it by evidence of other facts and circumstances, it is proper and usual in practice to admit the proof, on the assurance of the counsel who tenders it, that it will turn out to be pertinent and material." No such assurance was given in this instance.

If on the other hand these admissions were made after the deed was executed, they would have been evidence, *per se,* as tending to show the alleged fraud or mistake. If the defendant admitted *after* the deed had been executed, that the lands were to be in one body, without any qualifying or explanatory remarks showing that the plaintiff had waived his right to have them entire, it might well be a circumstance, however slight, in connection with other facts, tending at least to show, that there had been a mistake if not a fraud in the transaction. Evidence relative to the issue is admissible, though it be insufficient unless followed and supported by other evidence. *Whittington vs. The Farmers Bank of Somerset and Worcester,* 5 *Har. and Johns.*, 489.

But as this case is reversed and remanded on procedendo, it becomes a matter of small importance, when, we determine from the record these admissions of the defendant were made, whether before or after the deed. The suggestions which we have thrown out, will be sufficient to guide the parties upon this point, on a future trial. Inasmuch however as the exception does not disclose with sufficient distinctness, when these conversations between the witness and defendant took place, we regard them as inadmissible. Thereupon the ruling upon the third exception is reversed.

The evidence set out in the fourth exception, so far as it went to establish the value of the Missouri land, by the defendant's own statements and admissions, was a proper item of evidence. They related in part to the very period when the breach of the covenant is alleged to have taken place. It is also clear that the declarations of Kinkle detailed by the same witnesses, were not legal evidence. The declarations of an agent are not admissible to bind his principal under any circumstances, until the agency is first clearly established, which has not been done in this instance. Inasmuch however as part of the evidence embraced in this exception was admissible, as we have shown, it was irregular for the defendant's counsel to ask for the rejection of the whole, and the court was therefore right in not sustaining this application. For these reasons we affirm the court below upon the fourth exception.

The principles by which we are to determine the correctness of the circuit court's decision as presented by the fifth exception, have been settled by this court upon the former trial. It is true there appears to be some apparent conflict in the opinion of the Court of Appeals upon this point. The prayer of the defendant, which had been rejected by the county court on the former trial, presents substantially the same legal propositions as those which are contained in the two prayers of the defendant now before us under the fifth exception. These propositions were, "that the acceptance by Haney of the deed from Marshall, for the 320 acres of Missouri lands, mentioned in the articles of agreement on which suit is brought, was *prima facie*, a full performance of Marshall's covenant to convey, which by such acceptance became discharged, and the execution by Haney, of a deed for the same lands to Chaney, is an admission of his acceptance of the deed from Marshall, and the plaintiff is not entitled to recover." 9 *Gill*, 253. Upon a proper state of pleadings, (which did not then, but which now exists,) the court said, that the foregoing prayer *ought not to have been rejected.* This we regard as the *decision* of the court by which we are to be bound. It is true

the judge who delivered the opinion adds these qualifying remarks, that "in the absence of evidence of mistake, misrepresentation or fraud, if Haney accepted this conveyance from Marshall, in discharge of this stipulation in the agreement, it did discharge him." Thus a material qualification, which is not presented by the former or present prayers, is added. We are asked by the appellant's counsel to adopt the legal propositions as contained in the original prayer, as they stand; while the counsel for the appellee insists, that they can only be adopted with the qualification annexed, and that as a consequence the prayers now before us which omit this qualification, are wrong. Upon the determination of this alternative depends the reversal or affirmance of this exception.

The abstract proposition is undoubtedly true, that if the acceptance of this deed by Haney was the result of mistake, misrepresentation or fraud, he would not be compromitted by it. But it is equally true that unless there is evidence to support this legal proposition, it cannot be incorporated into the case. It is the duty of courts of justice not to moot questions, but to decide those which are really presented. Therefore any instruction which may be asked for by counsel, however correct in the abstract, should be rejected by the court, if unsupported by evidence properly in the cause. As this case is now presented by the record, we can discover no legal evidence to warrant the submission to the jury of the question, whether or not the plaintiff had mistaken the purposes of the deed, or had been circumvented by the defendant. We then understand the former decision to be in substance this, namely: that the law of the former case, as made by the evidence, was embraced in the prayer submitted by the defendant's counsel; and that the qualification respecting fraud, mistake, &c., would be the law, if such a case were made by the introduction of new testimony upon a subsequent trial. We do not discover that the case has been materially varied, and in the absence of evidence of mistake, misrepresentation or fraud, in the present record, we think the two prayers of the defendant embraced in the fifth exception ought to have been granted.

The first prayer of the plaintiff, presented by the sixth exception, puts a case of fraud on the part of the appellant, and mistake in the appellee, in accepting the deed. The only item of testimony in the whole record which would tend to prove such an allegation, was the testimony of Mr. Spencer, already commented upon under the third exception, conceding that testimony to be free from the objections therein pointed out, and admissible. This testimony however will be found wholly unsupported by any other facts adduced in the progress of the trial, from which a rational inference could be drawn of the fraud or mistake intended to be established. Standing alone, the admissions of the defendant, as proved by this witness, of themselves, establish nothing against him. We think therefore this prayer ought not to have been granted.

The prominent vice in the plaintiff's second prayer consists in its seeking to make Chaney virtually the arbiter between the plaintiff and defendant, and to clothe him with power to say whether the land conveyed by the latter to the former, was the identical land embraced in their covenant or not. The deed from Haney to Chaney, was a circumstance wholly immaterial and irrelevant to the present controversy, except so far as it afforded evidence of the acceptance by Haney of the deed from Marshall. It was therefore unimportant whether Chaney accepted the appellee's deed or not, and it was equally immaterial for what reason he refused to accept it. Because Chaney was unwilling to take land from Haney in detached pieces, it by no means follows that Haney would object to take separate tracts from Marshall. Indeed, neither the transactions, nor the reasons for them, between Chaney and Haney have any thing to do with the case now before us. The attempt by the plaintiff to sell and convey the land to Chaney was an act of ownership over it, and as such, was evidence that he had accepted the deed from Marshall for the identical lands.

There are several legal propositions embraced in these two prayers which are erroneous, and if one or more of several propositions contained in the same prayer be incorrect, though

65    v. 4

all that remain be right, the court could not properly grant such a prayer in its entirety.

We have intended to, and hope we have, settled all the material questions in the present controversy, by which the court below may dispose of the case finally upon its next trial, unless it is materially varied by the introduction of new evidence.

We overrule the judgment of the circuit court, upon the second, third, fifth and sixth exceptions, and affirm it upon the first and fourth.

ECCLESTON, J., concurred in the reversal of the judgment below, but differed from the majority of the court in some of the views expressed in their opinion.

*Judgment reversed and procedendo awarded.*