STATE OF MARYLAND, Use of Barbara Debelius, Widow, et al.

*vs.*

C. J. BENSON & CO.

*Master and servant: torts of servants; use of automobiles; liability of master.*

To render a master liable for the torts of his servant, the tort must have been committed while the servant was acting within the scope of his employment. p. 695

Where an employee, a salesman in the place of business of his employer, was directed in the mornings to bring the automobile of the employer, and at night to take it back to the garage, going and coming over a prescribed route, and instead of so doing took the machine, without permission, for his own purposes and pleasure, and while so doing runs into and injures a pedestrian, the employer is not responsible in damages for such injury. p. 699

*Query:* Whether the employer is responsible for torts or injuries committed by the employee with such vehicle, where, with the permission of the employer, the servant for his own purposes uses an automobile or other vehicle of the employer? p. 697

*Decided January 10th, 1917.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James J. Lindsay,* for the appellant.

*Stephen W. Gambrill* (with whom was *Garner W. Denmead* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Whether, under the facts as shown by the testimony, the Court was correct in granting a prayer, to the effect that Paul K. Soper was not acting within the scope of his employment by C. J. Benson & Co. at the time when the accident occurred, which gave rise to the present suit, is the sole question involved in the record in this case.

About 9:30 P. M., on March 15th, 1916, Frank M. Debelius was killed on the Philadelphia road, the result of being struck by an automobile, and this suit is brought under the statute by his widow, and on behalf of his minor children, to recover for the injury they have sustained by reason of his death.

Whether Debelius was struck by one machine or by two is not absolutely clear from the Record, but he certainly was hit by a machine which belonged to the defendants, and the question which the Court is now asked to decide is, whether the circumstances under which he was struck were of such a nature as to render the defendants liable therefor, by reason of the careless operation of the machine in the hands of their employee.

It is axiomatic law that to render the master liable for the torts of his servant, the tort must have been committed while the servant was acting in accordance with his employment, or as it is generally expressed, within the scope of it.

This does not mean that the act must have been done by any express direction of the master, either under a special or a general power, but that the servant was at the time engaged directly or indirectly upon the work or business for which he was employed. The law in this State upon this subject, as applied to the operation of automobiles, has been fully considered in two cases recently before this Court. *Symington* v. *Sipes,* 121 Md. 313, and *The Stewart Taxi Co.* v. *Roy,* 127 Md. 70.

It is unnecessary now to recite at length either principles or adjudicated cases after the very full, careful and elaborate review contained in those cases, which well illustrate the class of cases proper to be submitted to a jury, and the class in which the Court should deal with the question as a matter of law and withdraw the case from the consideration of the jury. These cases are in no respect in conflict, and a careful perusal of the very full opinions by JUDGES URNER and BURKE will be found to contain an accurate and complete statement of the law upon the subject.

The only exception in this case was the exception reserved to the action of the Court upon the prayers offered at the conclusion of the entire testimony.

All of the plaintiffs' prayers were refused, and the four offered on behalf of the defendants were granted. The refusal of the plaintiffs' prayers followed as a matter of course, if the Court was correct in withdrawing the case from the jury. The fourth prayer of the defendants should not have been granted, since it was predicated upon the evidence of the plaintiff alone, instead of upon the entire evidence of the case. Nor should the first prayer of the defendant have been granted, for reasons which will later be adverted to; but if the Court was correct in the granting of the defend-

ants' second and third prayers, then the error in the granting of the defendants' first and fourth prayers was harmless error and would not necessitate a reversal of the cause.

It is not deemed necessary to set out in full the evidence relating to the employment of Soper by the defendants, it is sufficient to state in a few words what the uncontradicted evidence shows.

Soper was employed to assist in the shipping room of the defendants, and part of his duty involved originally the driving of a one-horse wagon for the delivery of goods.

The defendants were the owners of a Ford Runabout, which was kept at a garage some mile or more distant from their salesroon and office. The automobile was only used by members of the firm in attending to their business, never for the delivery of any goods.

Having learned that Soper was familiar with the operation of the machine, he was instructed by Mr. Ehoff, his superior in the shipping department, to go to the garage in the morning, take the machine from there to the salesrooms over a prescribed route, and in the evening to return it from the salesrooms to the garage over the same route. He had no other duties connected with it or powers over it; there was not even a permissive use of it for his own purposes given to him.

On the evening in question, March 15th, sometime between six and seven o'clock, Soper took the machine as he had been accustomed to do, ostensibly for the purpose of returning it to the garage where it was kept, instead of doing which he got into the machine accompanied by a fellow employee by the name of Sloan, and drove out to the garage; instead of stopping and leaving the machine there, he and Sloan continued on, returned to the center of the city, got a lunch or light supper at a restaurant, and then went out the Philadelphia road to somewhere in the neighborhood of Stemmer's Run, where the machine was turned around and the return to the city begun.

By that time it had become dark, and the headlights on the machine failing Soper and Sloan trailed for some distance a large touring car, until the deceased, Frank M. Debelius was struck. Immediately after striking him they stopped the machine, placed Debelius in it, and also the fender which had been broken by the force of the impact, and returning to the city, took the man who had been hit to a hospital. Upon reaching it Debelius was found upon examination to be dead.

Such in brief is the version of the trip as given by both Soper and Sloan.

In answer to the direct question put to Soper, whether he had any authority to use the machine, for either his own business or pleasure, he replied that he had not, a statement which, so far as matters come within his own knowledge, is fully corroborated by Sloan, by Charles J. Benson, Herbert E. Cave and Louis L. Schwatz, who composed the firm of C. J. Benson & Co.

Soper undertakes to explain his trip by saying, that it was made for the purpose of seeing some man who had offered him employment, but whom he did not see; he expressly denied that the ride was in any manner connected with business of the firm of C. J. Benson & Co. or of any of the members composing that firm.

It further appears from the testimony that shortly before leaving the place Soper had an interview with Mr. Benson, and the counsel for the plaintiffs have ingeniously sought to argue that at this interview permission was given to Soper, on the evening in question, to use the machine for his, Soper's, business, and that such permission is sufficient to render the defendants liable for the act of their servant.

It is open to very serious doubt whether the permissive use by a servant for his own business of a machine of the master is sufficient to render the master liable; see *Miller* v. *Nat'l. Auto. Sales Co.,* 177 Ill. App. 367; *Davis* v. *Anglo-*

*Amer. Auto. Tire Co.,* 145 N. Y. S. 341; *Doran* v. *Thomsen,* 66 Atl. 897; *Reilly* v. *Connable,* 1916 A. L. R. A. 954.

Nor is it necessary in this case to determine this point, because there is no evidence whatever that any such permission was given, or any evidence tending to contradict the positive evidence to the contrary.

In an endeavor to contradict the evidence of the defendants, the plaintiffs by way of rebuttal placed on the stand George G. Wheeler, the Assistant State's Attorney of Baltimore County, who was present at the Coroner's inquest, and the sum and substance of his testimony was to the effect, that before the Coroner's jury Soper had made a different statement with regard to permission given him to use the automobile on that evening. At most, such evidence would simply go to affect the credibility of the witness Soper; it did not tend in the slightest way to affect the evidence of Sloan, Ehoff or Mr. Benson; it did not, therefore, contradict any of the direct evidence in the case upon the material fact, so as to render proper the submission to the jury of the question whether at the time when the machine struck Debelius, Soper was acting within the scope of his employment.

What the jury was impaneled for in the present case was to determine the facts, not to pass upon the credibility of any particular witness.

The only other testimony upon which it was sought to establish error in withdrawing the case from the jury, was the fact that Soper and Sloan were seen by Mr. Ehoff to get into the automobile, when it left the Benson salesrooms, on the evening in question, and that as he said nothing, or merely inquired where they were going, there was a constructive permission given to Soper for the use of the machine. This argument is fallacious, because it does not appear that Mr. Ehoff had any control over the machine, so as to grant or refuse permission to use it. And even if it be assumed that he had, for the purposes of the plaintiffs' case, it is equally clear that both expressly by word and by

the direction taken with the machine by Soper, Mr. Ehoff had every reason for believing that the machine when it left the Benson salesrooms, was being taken back to the garage, in accordance with the general instructions given to Soper in regard to the machine.

Under the most favorable aspect for the plaintiffs that can be taken of this case, the admission in open Court of the defendants, together with the testimony had, established the ownership ·of the machine, and the fact that the person operating it was an employee of the defendants, and that the burden of proof, therefore, rested upon the defendants to show that at the time of the accident, the servant was not engaged directly or indirectly upon any work or mission of his employer; more than that can not be claimed for the case, as made out by the evidence, and this burden the defendants by their testimony fully met.

This brought this case directly within the rules laid down in the case of *Symington* v. *Sipes, supra,* to which may be added the case of *Glassman* v. *Harry,* 170 S. W. 403, and *Jones* v. *Hoge,* 47 Wash. 663.

The trial Court, therefore, committed no error in granting the second and third prayers of the defendants, and the rulings upon the first and fourth were not prejudicial error.

The judgment appealed from will, therefore, be affirmed.

*Judgment affirmed, with costs.*