GERTRUDE WELLS *v.* HECHT BROS. & COMPANY.
[No. 13, April Term, 1928.]

*Decided May 24th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harry O. Levin,* with whom were *Levin & Lichtenberg* on the brief, for the appellant.

*George E. Kieffner,* with whom were *Stewart & Pearre* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Gertrude Wells, appellant, while riding as a passenger with one Caleb Griffin in his automobile, was injured by the alleged negligence of William E. Miller, an employee of Hecht Bros. & Company, appellee, who was driving a truck belonging to appellee. She sued appellee and there was a directed verdict in favor of the defendant, on which judgment was entered. This appeal is from that judgment.

This appeal is not concerned with the particulars of the accident or the extent of the injury, the only exception being to the granting of defendant's prayer withdrawing the case

from the jury, and the only question involved being whether Miller, the driver of the truck, was acting as the agent of the defendant at the time when the accident occurred.

On the night of the accident Miller, with other employees of the radio department of the defendant, attended a farewell party given by William N. Neepier, one of the employees of said department, to Powell, the manager of the department, who was about to sever his connection with defendant. None of the officials were invited or knew anything about the party until after the accident. Miller testified that on the morning of the day of the party Mr. Powell and a few others were talking about going out there that night, and witness said he did not know how he would get out there, and Powell said, "Take the truck." Witness was in the habit of using the truck when he was out installing or repairing radio sets and would some times keep it at his home over night. The last work he did that day was in Hamilton. "He went home to Lansdowne and washed, dressed and cleaned up, and came in on Park Avenue and met Mr. Happholdt, with whom he had made arrangements, before he left that morning, that he was to meet him there, as he knew Mr. Happholdt intended going to Mr. Neepier's. That he met him about 8.30, having gone there in the Chevrolet truck belonging to Hecht's. He got into the truck and he went to Mr. Neepier's home at Catonsville. Here they stayed until 12 o'clock. Then Mr. Torchin, Happholdt and himself got into the truck and took Torchin home"; that he was then proceeding to take Happholdt home when the accident at Fayette and Monroe Streets happened. Witness further testified that he was not on business for Hecht's, and denied that he had told Police Officer Johnson that he was, but admitted that he had talked with him after the accident and told him it was Hecht's truck. This witness and three other employees who attended the party, Torchin, Happholdt, and Neepier, all testified that it was a friendly gathering of the employees of the department as a farewell to Powell, and no officers of defendant were there or had anything to do with the party, and that no work was done or

business transacted for defendant. Powell did not testify. It appears, however, from the testimony of several witnesses that his whereabouts was unknown to defendant at the time of the trial. Nugent, the general manager of defendant, testified that he reprimanded both Powell and Miller when he learned after the accident that Powell and Miller had permitted Miller to use the truck for other than business purposes.

Much is attempted to be made by appellant out of the following testimony of Torchin: That he was invited to the party by Neepier, one of the service men; Powell had resigned and was to leave the store for out of town within the next two weeks and therefore Neepier had this party in his honor. Neepier was not in any position of authority.

Witness was told that the affair to be held there was to be a social gathering of the radio department and everybody connected with the radio department, even the stenographer, was asked to be there. Q. Was anything discussed therein, any matter of business discussed at all? A. In a certain way, yes. Q. What was discussed in the nature of business? A. How business is going on now, and what kinds of sets we are selling and what kind we ought to sell, and so forth and so on, and what other concerns are doing. Q. Miller was right there when that discussion took place? A. Yes. Q. You say there was a discussion as to the radio business and what kind of service you had been giving and what you expected to give? A. Yes. Q. How long did this discussion of service at Hecht's and so forth, how long did that continue? A. I did not say exactly we discussed the service at Hecht Brothers. Q. What did you mean. A. I am talking about radio business in general, not only at Hecht Bros., but in general, and it had nothing to do with business, it was the same as people talk over at parties, eating and so forth and so on. Q. There was no discussion about the kind of service you fellows had been giving? A. Not exactly, no. Q. Did you talk about the betterment of the service? A. Not exactly, no. No, I would not say that. Q. Do you mean you could not better your service, being that you were with them? A. Yes and no in a

case like that. We would rather talk about somebody else's concern than our own because we have enough of our own store while we are in the store. Q. But you were discussing the radio business? A. Yes, but not in a business way though."

It seems perfectly apparent from the above that these workmen had met at the home of one of their number to have a good time and to show their regard for the man under whom they had been working, who was about to leave them. Naturally there would be some "shop talk." But it is stretching things, somewhat, to infer they were meeting in the interest of their employer, no officer of which was present or knew anything of the meeting, and the only man present of higher rank than the workmen having no longer interest in the business. We do not regard the testimony as being even a scintilla of evidence tending to show agency in this case.

Concededly there is no other testimony in the case tending to show that Miller was engaged upon the business of appellee, unless the testimony of the policeman, Johnson, upon which appellant strongly relies, can be so considered. He testified as to a conversation he had with Miller just after the accident. "I asked Miller, I says, 'You got an awful nerve, ain't you, trying to kill people?' On the street this is, or on the corner. I says, 'Who owns that truck?' He says, 'Hecht's does.' 'What Hecht's?' 'Hecht's on Baltimore Street.' I said, 'What are you doing with it?' He said, 'I drive it for Hecht's.' I says, 'You do?' He says, 'Yes, sir.' 'What are you doing out with it this hour of the morning?' He said, 'I have been out on business.' 'Been out on business; who for?' He said, 'For Hecht's.' I said, 'You must be working over time, aren't you?' He said, 'A little bit.' "

Witness further testified that later, and before plaintiff was removed to the hospital, he had a conversation with Miller at the corner: "I says to him, I says, 'Pretty good, working over time this hour of the morning, ain't it?'" "Q. He did not deny that? A. Not then—he did later on. Then he said he was out in Catonsville somewheres. I says, 'You

were in a hurry to get in, wasn't you?' He says, 'A little bit.'" On cross-examination witness admitted that a little later, while they were still there at the accident, Miller told him he had been out to a little party at Catonsville.

Taking this statement as a whole, even if it could be regarded as substantive testimony, it could not reasonably be inferred from it that Miller intended to leave the policeman under the impression that he was then engaged in the business of his employer. But, in any event, it could not be admitted to prove agency. There must be proof of agency before the admission of an alleged agent can be offered to bind the principal. *Dearholt Co. v. Merritt,* 133 Md. 323; *Marshall v. Haney,* 4 Md. 511; *Atwell v. Miller,* 11 Md. 359; *Fifer v. Clearfield Coal Co.,* 103 Md. 1; *Debelius v. Benson,* 129 Md. 693. In the *Debelius* case it was said: "At most, such evidence would simply go to affect the credibility of the witness" (Miller). If his testimony were disregarded, there would still remain that of several other witnesses that, at the time of the accident, Miller was not acting within the scope of his employment and in the furtherance of defendant's business.

It is strongly urged by appellant that this case comes within the ruling in *International Co. v. Clark,* 147 Md. 34, rather than that in the *Debelius* case.

In the first mentioned case the court comments, along with other circumstances, on the fact that the testimony given by Flieg at the trial was different from the story told by him to the police officer immediately following the accident. But Flieg's testimony in which the conflict occurred was to *essential* facts as to which there was no other witness. That is not true of Miller's testimony in the present case.

The rule is well established in this state that, if the vehicle causing the accident belongs to the defendant and is being operated at the time of the accident by one in the general employment of the defendant, there is a presumption that at such time he was acting within the scope of his employment and in furtherance of defendant's business; but this presumption is only *prima facie* and may be rebutted and over-

come by evidence to the contrary, adduced during the trial by any of the parties to the suit; and where such evidence is undisputed and uncontradicted it becomes properly a question for the court. *International Co. v. Clark, supra,* and cases there cited.

We think defendant's testimony fully met this requirement, and that the case was properly withdrawn from the jury.

*Judgment affirmed, with costs to appellee.*