HARRY M. WAGNER ET AL. *v.* NATHANIEL B. PAGE, JR.

MORRIS W. FRANKLIN *v.* SAME

[Nos. 22, 23, April Term, 1941.]

*Decided May 20th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Wendell D. Allen*, with whom were *Alexander Gordon, III, G. Dudley Iverson*, and *Armstrong, Machen & Allen*, on the brief, for Wagner and Kuhfuss, appellants.

*Joseph Sherbow*, with whom were *S. Herbert Harris* and *Solomon Liss* on the brief, for Morris W. Franklin, appellant.

*William Page Dame, Jr.*, for Nathaniel B. Page, appellee.

JOHNSON, J., delivered the opinion of the Court.

This record contains two appeals from a judgment obtained by Nathaniel B. Page, Jr., in the Superior Court of Baltimore City. No. 22 is that of Harry M. Wagner and Carl H. Kuhfuss, partners trading as Kuhfuss Bakeries, while No. 23 is an appeal by Morris W. Franklin, individually and trading as Admiral Taxi Service.

Appellants were sued jointly by appellee, a passenger in the taxicab of the appellant in No. 23, for personal injuries sustained by him June 30th, 1940, at which time while riding in an Admiral Taxicab that vehicle collided with the bakery truck of Wagner and Kuhfuss at the intersection of Linden Avenue with Dolphin Street in Baltimore City. The only exception contained in the record relates to the court's action with reference to its rulings upon the prayers, but before discussing them, it is necessary to refer to the evidence.

Immediately prior to his injuries appellee, 27 years of age, resided at Chevy Chase, Maryland, but for some time had been employed by an automobile concern at Ardmore, Pennsylvania. From Ardmore on the day preceding his injuries he went to Washington, met Edward M. Smith, a friend of long standing, who lived in Arlington, Virginia, and together they proceeded to Annapolis shortly before midnight in the automobile of Page, stopped at Carvel Hall and stayed with friends for an hour or so, next driving to Baltimore, arriving after midnight. They went to Child's Restaurant for food and, being absorbed in the company of each other, decided to ride around Baltimore and talk. Inasmuch as they did not know much about the city they parked the automobile, hailed a taxicab and requested to be driven around the city, preferably around some park. Smith occupied the rear seat of the cab, while Page sat on the front seat with the operator, half-way facing the rear seat where his friend sat. While the cab was proceeding northerly on Linden Avenue, and according to Page and Smith, after it had entered the intersection of Linden Avenue and Dolphin Street, which intersects Linden Avenue at approximately right angles, it was struck by a truck of appellants in No. 22, which was proceeding westerly. The impact was of such force as to throw appellee through the cab window, and shortly thereafter he was found unconscious beneath the running board of one of the vehicles. For several days he remained in the hospital to which he was taken, suffered from concus-

sion of the brain, a dislocated clavicle and injuries to his ribs, and after being discharged from the hospital he was for some time unable to resume his regular employment.

According to many witnesses the collision took place at the center of the intersection, and near that point Dolphin Street is twenty-seven feet in width between curbs, while Linden Avenue is an equal distance in width.

The driver of the cab testified that when he arrived at Dolphin Street, the bakery truck was so far down Dolphin Street to his right as to convince him that he had plenty of opportunity to cross the intersection, proceeding to cross which, however, he found the bakery truck upon him, and in an effort to avoid a collision swerved the taxicab to the left, but nevertheless collided with the bakery truck, while for the driver of the latter, it is contended and was testified below, that, as he approached Linden Avenue, the cab was so far to the left as to cause him no apprehension whatever of a collision, but in trying to cross Linden Avenue he realized a collision was inevitable, and at that time did all within his power to prevent one. In addition appellants in No. 22 rely upon the provision of Code, article 56, section 235, that "all vehicles shall * * * give the right of way to those approaching from the right."

It was stipulated at the trial that the accident took place in the early morning and at the intersection of Linden Avenue with Dolphin Street there was no automatic traffic signal in operation, nor was there any traffic officer on duty controlling traffic; that the weather was clear and the streets were dry; that immediately prior to the accident the bakery truck was being driven in a westerly direction on Dolphin Street by Martin C. Suter; further, that appellee was a passenger in the taxicab, which was proceeding in a northerly direction on Linden Avenue and being driven by the agent and servant of its owner, Morris W. Franklin, trading as Admiral Taxi Service, and that both Linden Avenue and Dolphin Street were public highways of Baltimore City.

It thus appears from what has already been said that if the jurors believed the testimony of the taxi driver they could conceivably have found that he was not negligent, but the collision was caused, not by his failure to estimate the distance from the intersection of the bakery truck approaching from his right, but by an incredible increase in speed on the part of that vehicle, while had they believed the testimony of the bakery truck driver they could have found that the collision was occasioned by the negligence of the taxi driver in failing to have his car under control at the intersection and yield the statutory right-of-way to the bakery truck coming from the right. The jurors also could have not illogically concluded that the negligence of both drivers contributed to cause the accident resulting in appellee's injuries, assuming agency on the part of the two drivers. It is undisputed that McGowan, driver of the taxicab, was at the time of the collision acting within the scope of his employment by Franklin, but strenuously urged by Kuhfuss Bakeries that Suter, operator of the bakery truck, was at that time in no way connected with their business, but was upon a venture of his own.

This contention was raised by Wagner and Kuhfuss, trading as Kuhfuss Bakeries, by three prayers offered at the close of the entire case. The first prayer sought an instructed verdict in their behalf, because of the absence of legally sufficient evidence entitling appellee to recover against them. The second concluded with a similar instruction upon the ground that the uncontradicted evidence in the case showed that while they owned the bakery truck, it also showed that the truck was at the time of the accident being operated by Suter for his sole use and not upon any business for them, while the third prayer, likewise seeking an instructed verdict for Kuhfuss Bakeries, was predicated upon the ground that the uncontradicted evidence showed the truck was being operated for the use and purpose of Suter and not under the control or jurisdiction of Kuhfuss Bakeries, the truck owners.

From related cases considered by this court, it may be stated as a general rule that the operator of a motor vehicle is *prima facie* the agent and servant of its owner, but the presumption is a rebuttable one, and when uncontradicted and conclusive evidence is presented which shows that the driver was not in the service of the owner, it becomes the function of the trial court to declare the owner not liable. *Phipps v. Milligan,* 174 Md. 438, 199 A. 498; *Pennsylvania R. R. Co. v. Lord,* 159 Md. 518, 526, 527, 151 A. 400; *Wells v. Hecht Bros & Co.,* 155 Md. 618, 142 A. 258; *Pollock v. Watts,* 142 Md. 403, 406, 121 A. 238; *Dearholt Co. v. Merritt,* 133 Md. 323, 329, 330, 105 A. 316; *Debelius v. Benson & Co.,* 129 Md. 693, 100 A. 505; *Symington v. Sipes,* 121 Md. 313, 88 A. 134, 47 L. R. A., N. S., 662; *Myers v. Shipley,* 140 Md. 380, 116 A. 645, 20 A. L. R. 1460; *Vonherhorst Brewing Co. v. Amrhine,* 98 Md. 406, 56 A. 833.

The rule above announced finds support by the great weight of authority in this country, for as said in 5 *Blashfield,* Perm. Ed. sec. 3025:

"In the absence of a statute to the contrary, it is quite generally held that a loan of the automobile by the master to the servant does not affect the rule that the master is not liable for the negligent acts of the servant while driving the car for his own purposes.

"So where, at the time of a collision between automobiles a servant was driving one of them for the sole purpose of conveying himself home from the garage where the car was kept, his duties for the day having been finished, his master owning the car, was not liable for the injury resulting from the collision, even though, on other occasions, he had permitted such use of it.

"It is not unlawful for a master to loan an automobile to his servant for the servant's personal uses, so long as such uses are lawful, and so long as the servant to whom the machine is so loaned is a competent driver.

"Under the general rule that a loan of a machine does not carry with it responsibility for the negligence of the borrower, where a servant, while not engaged in the

master's business and during a time when he is free to engage in his own pursuits, uses the master's automobile for his own purposes, and while so using it negligently injuries another by its operation, the master is not liable, no statute so prescribing, although such use is with the knowledge and consent of the master."

In this case the evidence is uncontradicted to the effect that Suter, operator of the bakery truck at the time of the collision, had for some time been an employee of Wagner and Kuhfuss. Often his duties were to wrap bread and pastries preparatory to delivery, but on the day preceding the accident and indeed on all Saturdays he was a truck driver, taking the truck from the plant and delivering merchandise to various customers in and around Baltimore City. His day's work ended when he had completed "picking up" from the stores goods unsold during the day. He completed this work after midnight on the day of the accident, but had permission to use the truck of his employer to go to his home for rest preparatory to resuming his next day's work at four o'clock A. M. on the same morning. He regarded his home as being 2204 Greenmount Avenue where his brother lived and as well at 2111 West Lexington Street, the home of his sister. On the morning of the accident, and preceding the accident, after completing picking up his returns at 25th Street and Greenmount Avenue, he drove the truck to his brother's, accompanied by two of the company drivers who were off duty but agreed to return to work with him at four o'clock and assist him in wrapping bread for the day's deliveries. At his brother's he slept until three o'clock, and upon being awakened decided to drive to his sister's on West Lexington Street and get clean street clothing to wear after he had completed wrapping bread. He was on that drive accompanied by the two drivers above mentioned as well as by three young women and a man, visitors at his brother's, who had requested him to take them to their home near Lafayette Avenue and Poplar Grove Street. Suter and his two companions sat on the front seat of the truck, while the

man and three women sat on the floor of the truck, which at that time contained some unsold goods that he was privileged to keep in the truck until returning to work. Lafayette Avenue and Poplar Grove Street, the point where he intended to leave the man and three women, is not directly on the route he would take in going from his brother's to the home of his sister, and it would have been necessary for him to change his course to reach the home of his sister on West Lexington Street.

Was this evidence, which stood uncontradicted, sufficient to require its submission to the jury, not on the question of the driver's negligence independently or in conjunction with the negligence of McGowan, driver of the taxicab, but as related to the question of his being the agent of Kuhfuss Bakeries at the time the injuries were sustained? The sole contention advanced by appellee to justify its submission seems to rest upon the premise that for the driver to have rest during the period he was not required to work and for him to be able to have the use of the truck to return to his work was of necessity a benefit to his employer, and on this basis a jury question was made out, but if this contention is upheld in spite of the evidence that he had been loaned the automobile by the employer in order to return to his home for rest and fresh clothing, it would be difficult to imagine a case that could ever be withdrawn from the consideration of the jury upon the ground of non-agency. We think clearly that this is not such a benefit as makes his employer liable for an accident, while he is on his own time. Appellee relies upon 5 *Blashfield*, Perm. Ed. sec. 3041, as authority for the proposition that where a master places at the servant's disposal an automobile for use of the servant in going to and returning from his work, and where the transportation is beneficial both to the employer and the servant, the relationship of master and servant continues while the vehicle is being so used. In support of that statement, the author cites *Walsh v. Feinstein*, 251 Mass. 109, 146 N. E. 355; but there the driver of the truck was on duty from eight in the morn-

ing until six at night with no usual dinner hour, and the accident happened during the hours he admittedly was regularly employed. Under such circumstances the evidence was held sufficient to require its submission to the jury as to whether the truck driver was acting within the scope of his employment.

See also *Auer v. Sinclair Refining Co.*, 103 N. J. L. 372, 137 A. 555, annotation, 54 A. L. R. 623; *Ackerson v. Erwin M. Jennings Co.*, 107 Conn. 393, 140 A. 760, annotation, 56 A. L. R. 1127; *Silent Automatic Sales Corp. v. Stayton*, 45 Fed. 2nd 471.

Upon the point under consideration we conclude that the *prima facie* presumption of agency on the part of Suter vanished, inasmuch as the same was rebutted by uncontradicted proof, and there was error in refusing the first, second and third prayers of Kuhfuss Bakeries. In so holding, we are not unmindful of the fact that Suter, immediately after the accident in conversation with the officers denied that the man and three women at the time of the accident had been in the truck, but later when confronted by other witnesses to the contrary admitted their presence. This, however, does not reflect upon the question as to whether at that time he was using the vehicle for his own purposes or on the business of his employer.

We have found no error in the rulings of the trial court respecting the prayers of the other defendant, trading as Admiral Taxi Service. All of them with the exception of the demurrer prayer were granted, but he complains of injury by the granting of Kuhfuss Bakeries' No. 4 prayer, which reads as follows: "The court instructs the jury that under the law, when two vehicles approach an intersection so as to arrive at such intersection at approximately the same time, that vehicle shall have the right-of-way, which have other vehicles approaching at intersecting streets from the left, which vehicles shall give right-of-way to those approaching from the right, and if the jury believe from the evidence that Martin C. Suter at the time and place of the acci-

dent was driving the truck of the Defendants Wagner and Kuhfuss in a westerly direction on Dolphin Street, at its intersection with Linden Avenue, and there was approaching from the left the taxicab of the Defendant, Morris E. Franklin, which was travelling northerly on Linden Avenue, at its intersection with Dolphin Street, and if the jury shall further find that the operator of the taxicab at the time and place of the said accident did not give right-of-way to the truck of the Defendants, Wagner and Kuhfuss, which was approaching from the left, and if the jury further find that the driver of the Defendants, Wagner and Kuhfuss truck acted with due care and caution immediately preceding the accident, and that the failure of the operator of the Defendant Morris W. Franklin's taxicab to give the right-of-way was the sole cause of the collision in this case, then the verdict of the jury must be for the Defendants, Harry M. Wagner and Carl H. Kuhfuss, partners, doing business as Kuhfuss Bakeries."

A reading of the prayer is sufficient to demonstrate that it was drawn in reliance upon the statutory right-of-way given by Code, article 56, section 235, to all vehicles approaching intersecting streets from the right. Depending on the particular facts, prayers drawn under that section have been approved by this court in instances where jurors were required to find that the failure to yield the statutory right-of-way amounted to the sole and proximate cause of the accident. *Askin v. Long,* 176 Md. 545, 6 A. 2nd 246; *Carlin v. Worthington,* 172 Md. 505, 192 A. 356; *Sun Cab Co v. Reustle,* 172 Md. 494, 192 A. 292; *Bode v. Carroll-Independent Coal Co.,* 172 Md. 406, 191 A. 685; *Jersey Ice Cream Co. v. Bach,* 161 Md. 285, 157 A. 277; *Taxicab Co. v. Ottenritter,* 151 Md. 525, 135 A. 587.

We cannot say that there was not sufficient evidence in the case to justify the trial court in granting a proper right-of-way prayer, but as presented the instruction under consideration is at the outset nothing more than a garbled version of the statute, because although the

prayer begins with appropriate language it adds "which have other vehicles approaching from intersecting streets from the left," etc. The object of instructions is to inform jurors as to the law in order that they may intelligently act upon them with relation to the facts found to exist, but this prayer interjects language wholly meaningless and foreign to the limited inquiry under consideration, and just how it can help jurors is difficult to perceive. On the contrary, it is hard to see how it could have failed to confuse them especially with the further requirement that they must find the bakery truck was approaching from the *left*, a situation which, according to no witness, ever existed. It is insisted that its granting was free from error, but we entertain no such opinion and especially would we hesitate so to hold in view of the fact that we have decided the evidence as to the co-defendant insufficient to justify its submission to the jury. It is regrettable that as to Admiral Taxi Service a retrial of the case will be necessary, but in view of our conclusion respecting the fourth prayer granted Kuhfuss Bakeries there is no other alternative, because while Franklin's fourth prayer correctly instructed the jurors as to the right-of-way, inasmuch as it concluded with a recovery in his favor without any reference to the fourth prayer of his co-defendant, this of course could not cure the defect in the instruction under consideration.

> *Judgment in No. 22 reversed without a new trial, with costs to appellants therein; judgment in No. 23 reversed, with costs to appellant therein, and case remanded for a new trial as to that appellant.*