HENRY PARR *v.* ALBERT B. PETERS.
[No. 39, January Term, 1930.]

*Decided May 2nd, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Digges, Parke, and Sloan, JJ.

*Hilary W. Gans* and *Charles Ruzicka,* with whom were *Herbert M. Brune, Jr.,* and *Brune, Parker, Carey & Gans,* on the brief, for the appellant.

*G. Randolph Aiken* and *Wm. Kenyon Lloyd,* with whom were *Austin J. Lilly* and *Clapham Murray, Jr.,* on the brief, for the appellee.

Pattison, J., delivered the opinion of the Court.

This is an appeal from a judgment for the appellee, Albert B. Peters, defendant below, in an action brought against him by the appellant, Henry Parr, for personal injuries sustained

by the latter in being struck and knocked down by the automobile of the appellee, driven by him, at the intersection of Chase Street and Homewood Avenue, Baltimore, Maryland.

The plaintiff, Henry Parr, at the time of the accident, October 17th, 1928, was seventy-two years of age. He at such time resided, with his wife, on the east side of Homewood Avenue, a few doors south of Chase Street. As testified by him, he, about nine o'clock on the morning of that day, left his home and walked north on the east side of Homewood Avenue, intending to board a street car on Preston Street, to go to his work in the business section of the city. When he got to the southeast corner of Homewood Avenue and Chase Street, he looked first west on Chase Street anl then north and south on Homewood Avenue, and then east on Chase Street, and seeing nothing in sight in any of those directions he "stepped off the pavement and walked with a quick gait to get over to the other side of the street," when half across the street, on looking up Chase Street to the east, he saw within thirty feet of him an automobile "shooting like an express train." The driver of it did not blow his horn or give him any "sign of the approach of an automobile. I got rattled on seeing this automobile. I didn't know which way to go, backwards or forwards. I was stunned. I didn't know which way to step, and then the next thing I knew, I threw my hand out, and in throwing my hand out, the front of his machine struck me fair and square. He gave me no show whatsoever." Prior to the accident he was blind in the right eye, though his left eye was in perfect condition. He was rendered unconscious by the blow and was carried to the Maryland General Hospital, and at the time of the trial, November, 1929, he, as testified to by Dr. Clarken, had practically lost the sight of his left eye, caused "by pressure on the optic nerve, resulting from concussion of the brain."

Louis Rainone, a barber, who at the time of the accident was in his shop on the southwest corner of Chase and Homewood Avenue, heard a crash and, on going out of his shop, he saw the plaintiff lying about ten or fifteen feet from the north curb line of Chase Street, where pedestrians walk

north, and the defendant and his machine were at the time on the opposite side of the street from his shop, or on the northwest corner of Chase Street and Homewood Avenue. The noise, he said, was like two machines coming together. He thought it was two machines.

Charles L. Fox, an officer of the police force, testified that Chase Street is sixty feet wide and Homewood Avenue is about the same width, and that the pavement on Homewood Avenue from the building line to the curb line is about twelve feet.

The defendant, Peters, a medical student at the University of Maryland, at the time of the accident, was in his car, accompanied by Mrs. Zimmerman, on his way to school. He testified that "I was about within one hundred feet of the intersection of Chase and Homewood and I noticed Mr. Parr leaving the curb, and I sounded my horn, and Mr. Parr looked in my direction and stopped—came to a stop, and in the meantime I decreased my speed. If I was going fifteen, I wasn't going any faster, and when he stopped, I took it for granted that he had stopped to let me go on, and I went on at my usual speed, and when I got abreast—sitting in the car, he was right to my left, I saw him become confused, and started off, and I swerved the car to the right, and as I did I heard a noise that sounded like a bag or something hitting against the car, and I stopped the car right away, and of course, I was nervous, and I didn't put the emergency brake on right away—I drifted a little and then got that on." He was then asked: "You were going between fifteen and twenty miles an hour? A. Yes, until I got about one hundred feet from the corner in the middle of the square between Valley and Homewood. Q. That is when you first saw Mr. Parr leave the curb? A. Yes. Q. Where were you when Mr. Parr stopped? A. When he stopped I was about thirty feet from the corner and Parr was then a little to the south of the center of the street," and he thought Parr had stopped to allow him to proceed, and when he got opposite him he again started forward, and witness put his brake on and swerved his car to the right. On cross-examination Peters

testified that when Parr started off, after having stopped, the front of his car had passed him, he was abreast of him, about in the middle of the car, about five feet away. He seemed to be confused and walked rapidly into his car. That at this time his car was going fifteen miles an hour.

Mrs. Zimmerman, who was with the defendant in his car, testified that when she saw Mr. Parr "he was coming across the street, and, about five feet before he got to the center of the car, Mr. Peters blew his horn * * * and Mr. Parr seemed to look up and seemed to stop, and as we thought, he was going to stop and let us go by. At this point witness was interrupted by defendant's counsel, who asked her: "Let me understand you, you said something about five feet, blowing the horn when you were five feet from Mr. Parr? A. Oh, no; he was a good ways from him when he started to blow the horn." She then stated, "As we got near him he started to come up right quickly, and Mr. Peters swerved his car to keep from striking him, and struck him with the left end of the car, the fender, and he turned his machine towards Johnson's Square." She also stated that, when Parr started forward after stopping, the car had about gotten to the corner.

Mr. Peters and Mrs. Zimmerman, as well as the plaintiff, testified that at the time of the accident there were no cars upon the street at or near the point of the collision.

At the conclusion of the testimony the plaintiff offered three prayers, all of which were granted. The defendant offered two prayers, known as his "A" and "B" prayers, which asked for a directed verdict for the defendant, the first, because of the legal insufficiency of the evidence to entitle the plaintiff to recover, and the second, because of the contributory negligence of the plaintiff. These prayers were both rejected. The defendant offered five other prayers, all of which were granted. To the first, third, fourth, and fifth prayers of the defendant special exceptions were filed by the plaintiff; all of these were overruled. The only exceptions found in the record are those to the rulings of the court upon the granting of the prayers of the defendant, and its rulings upon the special exceptions thereto, as stated.

We will first consider and pass upon the ruling of the court in granting the defendant's third prayer. By this prayer the court instructed the jury "that the burden rests upon the plaintiff to show by a fair preponderance of evidence, satisfactory to the jury, that, as alleged in the declaration, the plaintiff was struck by the defendant's automobile while the same was being operated in a reckless and careless manner and with great speed. That if the jury do not believe any of these allegations to be true, or if the evidence leaves their mind in a state of even balance thereon, then the verdict of the jury shall be for the defendant."

The first clause of this prayer, which required the plaintiff to prove, by a preponderance of evidence, both, or all of the alleged negligent acts of the defendant therein mentioned, unquestionably placed upon the plaintiff a burden greater than that which he should have been required to meet, and although the jury were told in the subsequent clause of the prayer that they should find for the defendant if they did not believe any of those allegations to be true, nevertheless the direction in the first clause of the prayer, that the plaintiff should prove all of said allegations, still remained. And should it be held that the latter clause so qualified the first as to require the plaintiff to prove only one of the negligent acts, a meaning absolutely contrary to its express provision, it cannot be said with any assurance that the jury so understood it, but it is more than probable that, in obedience to the instructions therein given, they required the plaintiff to prove all of said negligent acts. To say the least, this prayer has not that clarity of expression with which instructions of the court should be stated, and was, we think, capable of misleading and confusing the jury. But the prayer, in our opinion, is also subject to the further objection that it segregates certain alleged negligent acts of the defendant, and then instructs the jury that, if it does not believe any one of said negligent acts so segregated to be true, their verdict shall be for the defendant, without regard to other negligent acts of the defendant contributing to the injury complained of, of which he may have been guilty.

The defendant in the declaration is not only charged with the specific acts of negligence mentioned in this prayer, but with negligence generally.

The accident in this case occurred at a street crossing, and the defendant, the driver of the automobile, was charged with the duty imposed upon him by section 209 of article 56 of the Code, in which it is provided that "all pedestrians shall have the right of way at street crossings in the towns and cities of this State."

This court has in a number of cases defined the duties imposed by this statute upon those operating automobiles, or other motor vehicles, in respect to pedestrians at street crossings in the towns and cities of this state. *Merrifield v. Hoffberger,* 147 Md. 134; *Brown v. Patterson,* 141 Md. 293; *Deford v. Lohmeyer,* 147 Md. 472.

In *Merrifield v. Hoffberger, supra,* this court, speaking through Judge Digges, said: "The effect of such statutory requirement is that drivers of automobiles, when approaching street crossings and passing over the way used by pedestrians, must slacken the speed of the automobile and have the same under such control as to be able to avoid a collision with a pedestrian, either by stopping the automobile or diverting its course * * *. The plaintiff had the right to assume that the driver of the truck would obey the law, and that, if the speed and direction at which he and the automobile were moving, if continued by both, would bring them in contact, the driver of the automobile would so slacken the speed of his truck or divert its course, as to avoid the collision, because this he was bound to do. This rule of law may be at variance with the common belief of many operators of motor vehicles, as indicated by the apparent tendency of many users and drivers of automobiles to recklessly disregard the rights of other users of the thoroughfare, and particularly is this true in respect to the rights of pedestrians. A large number of drivers of automobiles, knowing that a collision with a pedestrian rarely results in injury to the machine or its driver, act as if it is incumbent upon one traveling on foot to use

an extraordinary degree of care in keeping out of the way of an automobile, or else be maimed or killed."

In the later case of *Deford v. Lohmeyer, supra,* this court, speaking through Judge Urner, said: "It is the duty of the driver of a motor vehicle, in approaching a street crossing, to have the speed of the car so reduced, and to keep it under such control, as to obviate, so far as reasonably possible, the danger of collision with persons crossing the street on foot. This duty cannot be held to have been performed when a motor car is driven over a street crossing in excess of the lawful speed limit, and without any signals of its approach being given, and injures a person whose presence on the crossing could have been noticed by the driver in time for him to have prevented the accident if the car had been under proper control."

The duty which drivers of motor vehicles owe to pedestrials at street crossings is one which should be deeply impressed upon all drivers of automobiles and other motor vehicles in this state, if need be, by a strict, vigorous, enforcement of the law. Many times, drivers in their desire to reach their point of destinations, or to gratify their inclination or fondness for fast driving, give little or no attention or consideration to pedestrians to whom the right of way is given at street crossings. They not only proceed with much haste and speed in approaching a crossing, but in addition thereto they utterly fail to observe other requirements imposed upon them.

The rapid movement of vehicles upon the streets is urged upon the ground of the alleged necessity therefor, in the more speedy transaction of business, but certainly these considerations should not prevail against the safety and protection of pedestrians, whose right to use the sidewalks and to cross the traveled portions of the streets, at crossings, is absolutely essential to the promotion and successful operation and conduct of business.

The prohibition against reckless and fast driving at street crossings is not the only requirement placed upon drivers of automobiles and other motor vehicles, but other precautions

are to be taken by them. They are to observe the movements of the pedestrians while crossing the street, and to have their car under such control as to avoid injury to him if reasonably possible, and also to warn him, when necessary, by proper signals of their approach. And where the declaration, as in this case, contains the general allegation of negligence, the plaintiff is not to be confined in his right to recovery to segregated negligent acts of the defendant, but may rely for recovery upon other negligent acts of the defendant of which the latter may, upon the evidence, be found guilty. Upon this principle the plaintiff in this case should not have been confined to the acts of negligence mentioned in the third prayer of the defendant, and consequently this prayer should not have been granted. *White v. Parks,* 154 Md. 195.

We discover no reversible error in the court's rulings upon the other prayers of the defendant or upon the special exceptions to his first, fourth, and fifth prayers, but, because of the error committed in granting the defendant's third prayer, the judgment will be reversed.

> *Judgment reversed with costs, and new trial awarded.*