PENNSYLVANIA RAILROAD COMPANY *v.* IDA M. LORD.

[No. 58, April Term, 1930.]

*Decided August 4th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*George H. Myers,* with whom was *F. W. C. Webb* on the brief, for the appellant.

*Benjamin A. Johnson* and *William L. Rawls,* with whom were *Long & Johnson* on the brief, for the appellee.

Digges, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the appellee in the Circuit Court for Worcester County against the appellant for damages resulting from injuries sustained by her in a collision between a Ford automobile driven by her and a truck owned by the appellant.

The declaration alleges that "the plaintiff was operating her automobile on a public road or street leading through Easton, Maryland, to Claiborne, Maryland, and using due care and caution in the operation of the same, and while operating said automobile upon the said public road or street as aforesaid, and using due care and caution in the operation of the same, a truck belonging to the defendant and then and there being operated by its agents, servants and employees in a careless, reckless and negligent manner was, by reason of said carelessness, recklessness and negligence in the operation of the same, caused to be driven into and collide with the automobile being operated by the plaintiff." The record discloses that the plaintiff was severely injured, and contains evidence from which the jury could properly find that the driver of the truck was guilty of such negligence as was the proximate cause of the injury. There is no question raised on the appeal as to injury or negligence, the single question relied on by the appellant being whether or not the driver of the truck was the employee, servant, or agent of the Pennsylvania Railroad Company. There are fifteen exceptions in the record, fourteen to the rulings on evidence, and the fifteenth to the court's action in respect to the prayers.

The first exception was taken to the allowance of a question propounded by the plaintiff to Dr. Potter, the family physician of the plaintiff, who attended her for injuries sustained in the collision here in question. The accident occurred on Friday, October 19th, 1928, in the town of Easton, and the plaintiff had proceeded after the accident to Baltimore City, where she intended to go upon leaving home in Salisbury on the morning of that day. Upon arriving in Baltimore she went to the Young Women's Christian Association Building, where she was attended by a physician until Sunday following the accident, when she returned to her home in Salisbury. Dr. Potter had testified that he first saw the plaintiff after the accident on Sunday night, after her return from Baltimore, found her hair full of blood that had not been washed out, a cut on her head, and dark spots and blackness before her eyes, and she complained of her shoul-

der; that the cut on her head was about an inch long and just through the scalp, located on the left side just above the temple; that she was complaining about her shoulder; that he examined her chest, but found nothing at that time; that the next day she had a hemorrhage from her ear, which represented to him that she had a fracture at the base of the skull; that there were three such hemorrhages; that later he found a dislocated shoulder and fractured rib; that the fractured skull was represented to him principally by the hemorrhage from the ear, as it is one of the few things which causes a hemorrhage from the ear. The witness further stated that he had heard Miss Lord give her testimony in the case "with the exception of a minute or two when he was in another room"; that he had heard all of the testimony pertaining to the case that was given that morning with the exception of that minute or two; that he heard Miss Lord's testimony as to her injury, as to the previous condition of her eyesight, as to her suffering, as to her hemorrhages from the nose and left ear, and as to the condition of her eyesight in the left eye at the time of the trial. He was then asked: "Doctor, basing your judgment upon her testimony as well as all other testimony given in this case, which you state you have heard, and upon your personal knowledge of her condition prior to the injury, and upon her condition as known to you from treating her immediately after the injury, the treatment having continued up to this time, what in your judgment is the cause of the blindness in her left eye?" It was the overruling of an objection to this question, and permitting the witness to answer, which forms the first exception. The answer of the doctor was: "Hemorrhage around the optic nerve due to the fracture at the base of the skull."

There was error in this ruling. The form of the question was technically objectionable in failing to embrace the assumption that the testimony given by the plaintiff was true; and if this were the only objection, it would be harmless error, as the assumption of the truth of the testimony, by the doctor may have been logically inferred from the ques-

tion. But, aside from this technicality, the question should not have been allowed, for the reason that the witness was asked to express an opinion based upon the testimony of the plaintiff, he having been out of the courtroom for several minutes while the plaintiff was testifying. The record does not indicate what the testimony was which was adduced during the doctor's absence, and we cannot say that it might not have influenced his conclusion. The proper method would have been, with the permission of the court, to have had the court stenographer read the testimony of the plaintiff given during the doctor's absence, and in that manner he would have been acquainted with all of the testimony given upon which he was asked to base an opinion. As was stated by the court in *Lake v. People*, 1 Parker Cr. Rep. (N. Y.), 557: "To allow medical testimony to be given on merely such part of the evidence as they heard, would be as dangerous a principle as to permit a juror to sit during part of a trial and then unite with the rest in rendering a verdict." It has been suggested that the rule adopted in the case of *Scheller v. Schindel*, 153 Md. 547, that a question seeking an opinion of an expert, based on the assumption of the truth of testimony, and also founded on personal acquaintance, cannot be allowed, is applicable here. That rule is supported by *Northern Central Rwy. Co. v. Green*, 112 Md. 505; *Gordon v. Opalecky*, 152 Md. 536, and *Slacum v. Jolley*, 153 Md. 343, wherein it was said: "A hypothetical question must embrace every material element of the hypothesis founded upon the evidence, and it must not import into the question any element not founded upon the evidence in the case." The reason for the rule is said to be, that it is impossible, under such a question, for a jury to determine to what extent the expert witness bases his opinion upon the facts testified to, on the one hand, or to what extent upon knowledge had by the expert, the source of which is not disclosed to the jury. Such a situation would violate the rule, because it would import into the question an element not founded upon the evidence in the case. We are of the opinion, however, that the rule is not applicable here, because Dr. Potter had testified to the facts which

he gained from observation and treatment of the plaintiff, such facts being in evidence before the jury to the same extent as if they had been testified to by any other and different witness; therefore, when he based his opinion upon the testimony given in the case, it included and embraced the testimony given by himself as well as others.

The next thirteen exceptions were to the refusal of the court to permit the defendant to offer evidence tending to prove that the driver of the truck at the time of the accident was not the employee, servant, or agent of the defendant. The correctness of these rulings is the principal question presented by the record and argued by counsel orally and in their briefs. The theory of the appellee is that the defendant, having failed to deny the ownership of the truck in its pleas to the declaration, was thereby precluded from introducing evidence disproving agency, she contending that having thus failed to deny ownership, the incident of agency which is ordinarily presumed from ownership of personal property was admitted. Chapter 216 of the Acts of 1924, codified as subsection 109 of section 28 of Article 75, provides: "Whenever the ownership of any motor vehicle is alleged in the pleadings in any action or matter at law, the same shall be admitted for the purpose of said action or matter, unless the ownership shall be denied by the next succeeding pleading of the opposite party or parties."

The facts found in the record which are necessary for determination of the question are: That the truck in question is a Pierce-Arrow two-ton truck which is the property of the Pennsylvania Railroad, it also being titled in the name of that company, and at the time of the collision was engaged in distributing freight to the railroad stations between Easton and Tilghman Island in Talbot County, in connection with the operation of the railroad running from Love Point to Ocean City, with a branch line from Easton to Claiborne; that prior to March 29th, 1928, this railroad was owned and operated by the Baltimore, Chesapeake & Atlantic Railway Company, the main line extending from Claiborne in Talbot County to Ocean City in Worcester County; that on March

29, 1928, the rail lines of the said Baltimore, Chesapeake & Atlantic Railway Company were sold by the Chatham Phoenix National Bank as trustee under a decree of the District Court of the United States for the District of Maryland, at the suit of that bank; that at such sale Charles H. Carter of Baltimore City became purchaser thereof, together with certain steamboat property of the Baltimore, Chesapeake & Atlantic Railway Company; that this sale was ratified by order of the District Court on May 5th 1928, but that a deed of conveyance to the property was not executed by the trustee until November 28th, 1928; that after the ratification of the sale, but before said conveyance, Charles H. Carter sold the property so purchased by him to the Baltimore & Eastern Railroad Company, a corporation which had been incorporated in 1923; that the deed for said railway property passed directly from the bank, trustee, to the Baltimore & Eastern Railroad Company; Charles H. Carter and wife and the Baltimore, Chesapeake & Atlantic Railway Company also joined as grantors in said deed; that the time of the accident was after the ratification of the sale made by the bank, trustee, and before the execution and delivery of the deed; that at the time of the accident the Baltimore & Eastern Railroad Company was operating a railroad line from Love Point to Ocean City, and also a freight truck route between Easton and Claiborne; that William H. Covey, the driver of the truck, was paid by check of the Baltimore & Eastern Railroad Company for the month of October, 1928, during which month the accident occurred; that in October, 1928, Mr. Leon Stein was supervising agent for the Delaware Division of the Pennsylvania Railroad, and also for the Baltimore & Eastern Railroad Company and the Baltimore, Chesapeake & Atlantic Railway Company.

The Pennsylvania Railroad Company endeavored to show by the rejected evidence that it had leased the truck (the operation of which caused the injury to the plaintiff) to the Baltimore, Chesapeake & Atlantic Railway Company, and that company had paid the rental of $89 per month for the month of October, 1928, to the Pennsylvania Railroad Com-

pany; that the equipment used in operating the truck line from Easton to Claiborne was, during the transition period between May and November, 1928, leased to the Baltimore, Chesapeake & Atlantic Railway Company at a monthly rental of $89, and operated by the Baltimore & Eastern Railroad Company, which had become the final purchaser as a result of the foreclosure sale of the Baltimore, Chesapeake & Atlantic Railway Company property; that the necessary permit from the Public Service Commission of Maryland for the operation of the truck involved in the collision was issued to a certain R. K. Stackhouse upon the application of R. H. Soulsby, general freight and passenger agent of the Baltimore, Chesapeake & Atlantic Railway Company.

Under the settled law of this state, the driver of an automobile is presumed to be the employee, servant, or agent of the owner. *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 406; *Dearholt v. Merritt,* 133 Md. 325; *Debelius v. Benson,* 129 Md. 693; *Symington v. Sipes,* 121 Md. 313; *Salowitch v. Kres,* 147 Md. 23; *Louis v. Johnson,* 146 Md. 118; *Pollock v. Watts,* 142 Md. 403; *Butt v. Smith,* 148 Md. 344; *Nattans v. Cotton,* 150 Md. 466; *International Co. v. Clark,* 147 Md. 34; *Wells v. Hecht Bros.,* 155 Md. 618. This rule is also applied in many of the courts outside of this state, and may be said to be the general rule recognized throughout the United States. The ownership of an automobile causing injury having been established, the rule which holds that the driver at the time of the injury is the servant or agent of the owner, and engaged in the owner's business, is spoken of by some courts as an inference, and by others (of which this court is an example) as a presumption. But without regard to which is technically correct, the results flowing from such a situation are the same, namely, that without any evidence to the contrary, such presumption or inference is a sufficient basis for the verdict of a jury. The reason for the rule is that common experience and' observation demonstrates that in a large majority of cases automobiles are operated by the owners thereof, or their servants and agents, and that, in the cases where this is not true, the knowledge of its untruth,

and the ability to show the true state of facts, are peculiarly within the possession of the owner. In this state, up to the present time, this presumption has been held to be rebuttable, and the evidence offered in rebuttal may be so uncontradicted and conclusive as to entitle the court to say as a matter of law that it has been rebutted. On the other hand, the evidence as to agency may be conflicting, and in such case would present a question for decision by a jury. See cases *supra.* In *Shearman & Redfield on Negligence,* 6th Ed., vol. 1, sec. 158, it is stated: "When the plaintiff has suffered injury from the negligent management of a vehicle, such as a boat, car or carriage, it is sufficient *prima facie* evidence that the negligence was imputable to the defendant to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control at the time and that the accident was occasioned by the fault of a stranger, an independent contractor, or other person, for whose negligence the owner would not be answerable." See also *Berry on Automobiles,* 6th Ed., p. 1126, sec. 1358.

The above being the established law of this state, the question presented here for the first time is: Does subsection 109 of section 28 of article 75 broaden the rule, so that when the ownership is not denied in the next succeeding pleading, not only is the ownership conclusively presumed for the purposes of the case, but the agency of the driver is also thus presumed, thereby precluding the defendant from showing, if he can, that while the title and property of the automobile are in him, at the time of the accident it was being operated by an independent contractor, a stranger, or some one who was not the servant or agent of the defendant, or was not engaged in the defendant's business. We do not think the provision of the Code under consideration is susceptible of such a construction, for it would be contrary to the commonly accepted meaning of the language employed. Neither do we think that the Legislature contemplated the result which would

follow from giving it such construction. The evil or inconvenience of the burden which the law, prior to the passage of this legislation, imposed upon the plaintiff, and which the Legislature had in mind to correct, was that of requiring the plaintiff to prove the defendant's ownership of the automobile as a fact necessary to recovery, which fact in most cases would be undisputed and not susceptible of successful denial, yet which, if not formally admitted by the defendant, would require such proof on the part of the plaintiff. This being, in our opinion, the purpose of the legislation, the language employed should not be given a construction which would do more than give effect to the legislative object, especially when to do so would be to broaden the commonly accepted interpretation of the words "owner" or "ownership," and would change and unsettle the fixed rules of law and practice determined by this court in many cases. Before the passage of this legislation, even though the plaintiff had proved that the defendant owned an automobile, the latter was entitled to show that at the time of the accident it was not being operated by his servant or agent. It cannot logically be held that the language employed puts, or that the Legislature intended to put, a plaintiff, in cases where the defendant failed to deny ownership in the next succeeding pleading, in a more advantageous or different position than he would have been had he, before the passage of the act, proved ownership. It simply was intended to dispense with the necessity of proof as to ownership in those cases where ownership was not denied by the defendant in the next succeeding pleading. Neither do we think that the definition of "owner" contained in section 173 of article 56 of the Code, which provides: "Whenever the term 'owner' is used in this sub-title, it shall include any person, firm, association or corporation owning a motor vehicle or having the exclusive use thereof, under contract of purchase, lease, hiring or rental thereof, or otherwise," plays any part in the determination of the question here presented. The title of article 56 is "Licenses," and the sub-title under which section 173 appears is "Motor Vehicles." The effect of that definition would be to treat

one who was the lessee of an automobile at the time of an accident as being equivalent to the owner, the purpose being, in so far as the application of the motor vehicle law is concerned, to include under the term "owner" certain persons or corporations who in fact did not have the property in or title to automobiles in question. This language is a recognition that a lessee or purchaser under contract of sale of an automobile might not, strictly and technically speaking, be said to be an owner, and therefore it was found necessary, in so far as the motor vehicle law is concerned, that such persons should by legislative definition be embraced within the term "owner."

While, as we have said, this court has not up to this time been called upon to construe subsection 109, it has in numerous cases construed subsection 108 of the same section and article of the Code. Subsection 108 provides: "Whenever the partnership of any parties, or the incorporation of any alleged corporation, or the execution of any written instrument filed in the case is alleged in the pleadings in any action or matter at law, the same shall be taken as admitted for the purpose of said action or matter, unless the same shall be denied by the next succeeding pleading of the opposite party or parties."

In *Fifer v. Clearfield Coal Co.,* 103 Md. 3, the *narr.* alleged that the appellant by his general agent Dietrich entered into a written contract with the appellee by Rogers, Holloway & Co., agents of the appellee, duly authorized by him to execute said contract in its behalf. The written contract was then set out in the *narr.* This court said: "At the trial the appellant contended that the contract having been set forth *verbatim* in the declaration, and not having been denied by the appellee in its next succeeding pleading, it must be taken as admitted for the purposes of this action as well as the agency of Rogers, Holloway & Co. Such a construction, however, is broader than that warranted by the terms of the statute." The court, after then quoting subsection 108, proceeded: "The failure to deny any of these in the next succeeding pleading, operates as an admission against the oppo-

site party. In *Banks v. McCosker*, 82 Md. 525, this court, having this section of the Code under consideration, said: 'We think it very clear that the legal effect and meaning of the statute is, that the next succeeding pleading must in terms deny the signatures of the maker and payee as well, and we do not think the general issue plea is such a denial as the law contemplates. Before the passage of the Act of 1888, ch. 248 (of which the provision in the Code is a codification), under issue joined on the general issue plea, the plaintiff had the burden cast upon him to establish the due execution of the note sued upon. Such being the case, what possible purpose could the Legislature have had in the passage of the act in question, if not to relieve the plaintiff from the burden of proving the partnership of parties, the incorporation of an alleged corporation, or the execution of any written instrument filed in the case or alleged in the pleadings.' The failure of the appellee to make denial of the execution of the contract as set out in the declaration, had the effect only of relieving the appellant of proving it, but it did not admit that Rogers, Holloway & Co. were the agents of the appellants (appellees) with authority to bind them as charged in the *narr.* That was put in issue by the pleas, and was open for proof as any other fact that had been alleged."

In the later case of *Tippett v. Myers*, 127 Md. 527, which was a suit in assumpsit against an alleged partnership, the partnership was not denied by the pleas. Chief Judge Boyd, speaking for the court, after quoting from *Fifer v. Clearfield Coal Co., supra,* said: "So in this case the fact that the defendants were partners is admitted, but does not admit that the suit was on a partnership transaction, or that what one partner did in reference to it necessarily bound the other. The defendants could not truthfully have sworn that they know, or had good reason to believe, such allegation of copartnership to be untrue as the Practice Act provides. The failure to deny the partnership had the effect only of relieving the appellee of proving it, to follow the language used in *Fifer's* case. Surely if this court was right in that case, where the declaration expressly alleged that the written con-

tract was entered into with the appellee by Rogers, Holloway & Co., the agents duly authorized by them to execute it, in saying that their failure to deny the execution did not admit that these parties were the agents with authority to bind them, the failure to deny the partnership could not take from these defendants the right to prove that it was not a partnership transaction." As in the *Fifer* case it was held that failure to deny in the next succeeding pleading the execution of a written instrument, alleged in the declaration, did not prevent the defendant from showing that the party who signed the written instrument was not its agent; and in the *Tippett* case the failure to deny partnership did not prevent the defendant from showing that the claim was not on a partnership transaction, or that one of the partners, as to that transaction, was not an agent of the partnership; so in this case, the failure to deny ownership does not prevent the defendant from showing that the driver of the truck was not its agent at the time of the accident. Having determined what in our opinion is the correct construction and effect of subsection 109 of section 28 of article 75 of the Code, it follows that there was reversible error in the rulings set out in exceptions two to fourteen inclusive, and that the defendant should have been allowed to show, if it could, that at the time of the accident the driver of the truck was not its servant or agent, but was the agent of its lessee.

The appellant offered eight prayers, of which the third, fourth, fifth, and eighth were granted, and the first, second, sixth, and seventh rejected. We find no error in the rejection of the sixth and seventh prayers, as the instructions therein sought were sufficiently contained in the eighth prayer, which was granted. The appellant makes no serious contention in respect to its first prayer, which was rejected. This prayer asked the court for an instruction that there was no evidence legally sufficient from which the jury could find that the driver of the truck was at the time of the collision the agent of the defendant. We find no error in its rejection, for the reason that the presumption from ownership, plus the testimony of the plaintiff and her companion, Miss Todd, as

to admissions made by Covey, the driver, at the time of the accident, in respect to who his employer was, would compel the rejection of that prayer.

The second prayer asked for the instruction "that the uncontradicted evidence in this case shows that William H. Covey, the driver of defendant's truck at the time of the collision with plaintiff's automobile, was not, at said time, using said truck as the agent, servant or employee of the defendant, and the verdict of the jury must be for the defendant." The granting of this prayer would have necessitated the court in finding as a matter of law that there was no sufficient evidence upon which the jury might base a verdict for plaintiff. The record is such as to suggest at least two possible theories upon which such a verdict might be predicated: First, that the jury could find from the evidence that the Pennsylvania Railroad Company, the Baltimore, Chesapeake & Atlantic Railway Company, and the Baltimore & Eastern Railroad Company were each distinct and separate entities; and, having thus found, conclude that the driver of the truck was at the time of the accident the servant or agent of the Pennsylvania Railroad Company; Second, that the jury might find from the evidence that the three corporations mentioned were in reality one, and that one the Pennsylvania Railroad Company, so that it made no difference whether the driver of the truck was the immediate servant of the Baltimore & Eastern Railroad Company or the Baltimore, Chesapeake and Atlantic Railway Company, because they were simply subsidiaries or agents of the Pennsylvania Railroad Company, and portions of its system. If the second theory can be supported from the evidence, the Pennsylvania Railroad Company would be responsible, even though it be shown that the truck had been leased to the Baltimore, Chesapeake & Atlantic Railway Company, or that the Baltimore & Eastern Railroad Company was actually operating the truck and paying the driver at the time of the accident. Upon an examination of the evidence with the purpose of supporting one or both of these theories, we are of the opinion that the jury might properly conclude that the corporations were sep-

arate and distinct. The jury having reached such a conclusion, is the evidence as to the driver being the agent and servant of the Pennsylvania Railroad Company so inconclusive as to require the court to direct a verdict for the defendant? What is the evidence? First, the presumption or inference of agency arising from the failure to deny ownership by the Pennsylvania Railroad Company in its pleadings. Were this presumption standing alone, we would have no hesitancy, upon the authority of the cases *supra,* in saying that it had been rebutted and dissipated. But in this case we have something added to this presumption, namely, the testimony of the plaintiff and her companion as to statements made by Covey, the driver of the truck at the time of the accident. The plaintiff testified: "Q. Did he (the driver) or not tell you by whom he was employed? A. He said the Pennsylvania people. Q. The Pennsylvania Railroad? A. Pennsylvania people." The testimony of Miss Todd, the plaintiff's companion at the time of the accident, on this point is: "Q. Do you recall having any conversation with the driver of the truck which had this collision? A. Yes, sir. Q. Tell the jury what he said to you at that time or in your presence? A. He came right over to us and we asked him if he would give us his name and address, and he did. He said it was a Pennsylvania Railroad truck and he was working for them." The above is the entire testimony offered by the plaintiff tending to prove that the driver of the truck at the time of the accident was the agent or servant of the Pennsylvania Railroad Company. The driver of the truck, when called as a witness for the defendant, testified that he did not tell either the plaintiff or her companion, or any one in her presence, after the collision, how he was employed or that he was employed by the Pennsylvania Railroad Company; that they did not ask him anything about the truck; that he was employed by Mr. Stein, paid by check, and when shown the check introduced in connection with the testimony of Mr. Stein, stated that that was the check received by him in payment for the last half of October, and that the signature on the back of it was his signa-

ture. In the case of *Debelius v. Benson, supra,* Soper, the driver of the car causing the accident in that case, in testifying for the defendant, stated that he was not using it at the time of the accident with the permission of the owners. In rebuttal the plaintiff produced the assistant state's attorney of Baltimore County, who testified that the driver of the car had made different and contrary statements at the coroner's inquest, the driver at that time stating that he had the permission of the owners to use the car. The trial court granted a prayer instructing the jury that there was no evidence that the driver at the time of the accident was the agent of the owner, and their verdict must be for the defendant. Upon appeal, in affirming the lower court, this court said: "At most, such evidence would simply go to affect the credibility of the witness Soper; it did not tend in the slightest way to affect the evidence of Sloan, Ehoff or Mr. Benson; it did not, therefore, contradict any of the direct evidence in the case upon the material fact, so as to render proper the submission to the jury of the question whether at the time when the machine struck Debelius, Soper was acting within the scope of his employment." The distinction between that case and this is that the testimony as to the admission of the driver, which was contrary to his evidence under oath on the stand, was given in rebuttal; while here the testimony as to the statements or admissions of the driver was given by the witnesses for the plaintiff, and the driver subsequently denied that he was the servant of the Pennsylvania Railroad Company, and also denied that he had ever made any statement to that effect to the plaintiff or her companion. There can be no logical difference between the situation presented by the two cases, and the language of the court in that case is applicable here; the rule there laid down must also govern here. *Wells v. Hecht Bros., supra.*

The question of whether or not admissions of an alleged agent, so as to bind the principal, may be offered before some evidence is produced tending to prove the agency, is not here presented, for the reason that while these admissions or state-

ments of the alleged agent were introduced without any proof
of agency other than the presumption arising from ownership
by the defendant of the truck in question, this testimony was
not objected to, and forms a proper part of the case.  Our
conclusion upon the first theory set out above is that the jury
were entitled to find from the record three separate and dis-
tinct corporations, and that, if they did so find, there was no
evidence admitted by the trial court legally sufficient to show
that the driver of the truck at the time of the accident was
the agent of the Pennsylvania Railroad Company, and, con-
fining the case to this theory of recovery by the plaintiff,.
the second prayer of the defendant should have been granted.

In respect to the second theory, we think there is sufficient
evidence from which the jury might properly have found
that the Baltimore, Chesapeake & Atlantic Railway Com-
pany and the Baltimore & Eastern Railroad Company were
parts of the Pennsylvania Railroad system, were under the
direct management and control of the officers of that railroad,
and were its agents, they being operated and the records
thereof being kept separate for bookkeeping purposes.  What
evidence the record discloses on this point was offered by the
appellant, which showed that Mr. Stein was the supervising
agent of the Delaware Division of the Pennsylvania Rail-
road Company and the Baltimore & Eastern Railroad Com-
pany; that in October, 1928, in addition to these positions,
he was also supervising agent of the Baltimore, Chesapeake
& Atlantic Railway Company, and at that time he had direct
supervision of the operation of a truck line engaged in haul-
ing freight between Claiborne and Easton, Md., including
intervening stations; that he was operating this trunk line
for the account of the Baltimore, Chesapeake & Atlantic
Railway Company, and that there was a special contingent
fund of the Baltimore & Eastern Railroad Company author-
ized by the general manager for the operating costs, such as
wages, truck operator, help, gasoline, oil, repairs, franchise
of the highway, etc., all of which were paid out of the Balti-
more & Eastern contingent fund; that he personally approved
all bills of that character and handled all vouchers prepared,.

out of this fund, and made delivery of all the vouchers; that during the month of October, 1928, the Pierce-Arrow truck was being operated between Claiborne and Easton under his supervision; that all operating costs of this truck, including the driver's salary, were paid under his supervision out of the Baltimore & Eastern contingent fund, except the rental charged by the Pennsylvania Railroad Company for the truck; that he became supervising agent of the Baltimore & Eastern Railroad Company on May 1, 1928, by the authority of his superintendent; that he did not know what authority the superintendent had to make him supervising agent of the Baltimore & Eastern Railroad Company; that the superintendent to which he referred was the superintendent of the Delaware Division of the Pennsylvania Railroad and also superintendent of the Baltimore & Eastern; that he did not know who owns or controls the Baltimore & Eastern Railroad; that from an operating standpoint he was the supervising agent, F. H. Lewis of Wilmington, Del., is the division manager; E. D. Bobout of Wilmington, Del., is the trainmaster; J. T. Mickart is the road foreman, and W. R. Davis of Wilmington, Del., is the superintendent; that these officials held the same positions for the Delaware Division of the Pennsylvania Railroad as they did for the Baltimore & Eastern Railroad. Witness was then asked: "Is not the Baltimore & Eastern Railroad managed, operated and controlled by the officials of the Pennsylvania Railroad Company? A. I cannot answer your question. Q. Under whose authority do those gentlemen act that you just named? A. I am acting under authority of our superintendent; the others, other than W. R. Davis, the superintendent, but I cannot say under whose authority he is acting." That he had no knowledge of any individual who had any stock in the Baltimore & Eastern Railroad Company, or who had access to the stock books of this company, or who was the president of the company, or whether they ever had any stockholders' meetings. "Q. Do you know whether or not the Baltimore & Eastern is an agent of the Pennsylvania Railroad, or a subsidiary of it, during October, 1928? A. I do not." It

was further shown by the defendant's witness Craig that he is the assistant chief clerk in the office of the comptroller of the Pennsylvania Railroad Company and operating companies; that he supervises the accounts of the Baltimore, Chesapeake & Atlantic Railway Company and the Baltimore & Eastern Railroad Company. This evidence tended to prove the unity of the three railroads, and would, standing alone, be sufficient for the jury to so find.

By rejecting the testimony offered on behalf of the defendant tending to prove three distinct corporations and rebutting the testimony of unity, which we have said should have been admitted, the court committed error for which the case must be reversed and a new trial awarded.

*Judgment reversed, and new trial awarded, with costs to the appellant.*

---

PARKE, J., filed a dissenting opinion as follows, in which SLOAN, J., concurred.

The burden of proof was upon the plaintiff to show by legally sufficient testimony that the defendant corporation was responsible for the injury she had sustained. This indispensable testimony is not supplied by conjecture or speculation nor by inferences which are not warranted by the facts.

The truck by which the injury was inflicted was leased by the Pennsylvania Railroad Company to the Baltimore & Eastern Railroad Company as the successor corporation by purchase to the Baltimore, Chesapeake & Atlantic Railway Company. The legal effect of the lease was to transfer for a prescribed period of time the possession and control of the property to the lessee to the exclusion of the lessor's possession and control. At the time of the wrongs alleged the truck was driven by a servant of the Baltimore & Eastern Railroad Company, a public service corporation, in the course of the operation of the latter as a public carrier over its authorized motor truck route upon a public roadway. There is no testi-

538

mony of evidential value that the driver of the truck was in the employ of the defendant corporation, or was subject to its control or was engaged in its business. Nor is there any legally sufficient evidence from which the jury could infer that the defendant carrier either was one of a trinity of principals composed of the three corporations mentioned, or was the principal to the corporate carrier which was the lessee of the truck whose negligent operation caused the plaintiff's hurt. It is submitted that a joint enterprise, or the relation of principal and agent among two or three public service corporations, is not to be inferred from the circumstance that certain servants or agents of one perform similar services for both or all, unless it otherwise appear that the corporate entities shall contemplate a performance which will bind them jointly, since, in the absence of such evidence, the authority conferred by each one will be deemed limited to the separate corporate business undertaking of each corporation. *Mechem on Agency* (2nd Ed.), secs. 182-185; *Bethlehem Steel Co. v. Concrete Pile Co.,* 141 Md. 67, 78-83; *Stewart Taxi Co. v. Spencer,* 149 Md. 635. Compare *Balto. Transit Company v. Swindell,* 132 Md. 274; *Pugh v. Washington etc. Co.,* 134 Md. 196; *Pennsylvania R. Co. v. Hoover,* 142 Md. 251, which are to be distinguished on their facts and the principle involved.

The majority of the court reads the record differently, but the facts are contained in the prevailing opinion, and, in my judgment, they show that there is no competent testimony on the record to impute liability to the defendant, and the case should have been taken from the jury on this ground. The effect of awarding a new trial is to give the plaintiff a second opportunity to furnish testimony which, if it exist, should have been produced by her in the first instance.