ELLA S. BROWN *v.* BENDIX RADIO DIVISION OF BENDIX AVIATION CORPORATION, ET AL.

[No. 67, October Term, 1946.]

*Decided February 7, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Samuel H. Feldstein* for the appellant.

*Clater W. Smith* and *J. Gilbert Prendergast*, with whom were *Clark, Thomsen & Smith* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Ella S. Brown brought an action for personal injuries sustained on July 10, 1945, when she was struck by a passing automobile after alighting from a bus on Loch Raven Boulevard near its intersection with Marble Hall Road in Baltimore City. The declaration alleged that the automobile was owned by James L. Reid and operated by William D. Cowman in the course of his employment by Bendix Radio Division of Bendix Aviation Corporation. General issue pleas were filed by each of the defendants. The case came to trial in the Baltimore City Court, before the court and a jury, on June 7, 1946.

After counsel for the plaintiff had produced testimony and closed his case, counsel for the defendants offered motions for directed verdicts, on the grounds that there was no evidence legally sufficient to show negligence, and that the uncontradicted evidence showed that the plaintiff was guilty of contributory negligence. The court excused the jury, and stated that he was prepared to take the case from the jury on the ground that there was no evidence to prove "what car struck the plaintiff or who drove it." Thereupon counsel for the plaintiff stated that the driver of the automobile causing the injury was still in court, and requested that he be allowed to reopen the case and recall him to the stand for the purpose of asking him only one question, *i. e.*, whether the automobile he was driving at the time of the accident was the automobile that struck the plaintiff. The court declined the request, and silenced the protests of plaintiff's counsel by remarks which are characterized in the appellant's brief as "brusque" and "undignified." The court then recalled the jury and directed a verdict for the defendants, "because we don't know what car hit that

woman." The court denied a motion for a new trial a few days later.

The sole contention of the appellant is that the court's action was arbitrary and an abuse of discretion, and that the judgment should be reversed and a new trial granted to afford an opportunity to supply the alleged defect in the proof. The appellees, on the other hand, contend (1) that the court's ruling was discretionary and not appealable, and (2) that even if the ruling was erroneous, it was not prejudicial because the evidence required a directed verdict, even if the proposed question had been put and answered in the affirmative.

We need not dwell upon the charge of rudeness to the plaintiff's counsel. Regardless of provocation, heated altercations between the court and counsel are unfortunate and can hardly be condoned but in this appeal we are concerned only with the possible effect upon the rights of the litigants, not with matters of propriety. The alleged remarks were made out of the presence of the jury. Compare *Western Maryland Dairy Corp. v. Brown,* 169 Md. 257, 181 A. 468; and *Weinstein v. Boyd,* 136 Md. 227, 235, 110 A. 506. The only question before us is whether the court's refusal to reopen the case, or submit it to the jury, was reversible error. We shall first consider whether the case was one for the jury to pass upon, aside from the alleged defect in the proof.

In passing upon the granting of the motion for directed verdict, this Court is not restricted to a review of the reasons assigned for the ruling. *Friend v. Hammill,* 34 Md. 298; *Laporte Corp. v. Pennsylvania-Dixie Cement Co.,* 164 Md. 642, 647, 652, 165 A. 195, 168 A. 844, 108 A. L. R. 1474; compare *Alleghany Corp. v. Aldebaran Corp.,* 173 Md. 472, 196 A. 418.

Loch Raven Boulevard runs approximately north and south at the scene of the accident, and is a dual highway with a grass plot in the center. The traffic lanes are 24 feet wide. Marble Hall Road, a highway 50 feet wide, intersects the boulevard on the west side, but does not extend to the east. At about 10 A. M. on a clear day, July 10, 1945, the plaintiff alighted from the front en-

trance of a bus of the Baltimore Transit Company, which had stopped at the east curb in the northbound traffic lane, at the regular bus stop, marked by a sign on the curb. About twelve other passengers alighted from the front and center doors. The plaintiff stepped on the sidewalk and went in front of the bus, intending to cross the boulevard to the southwest corner of the intersection, occupied by an apartment house where she was employed, "directly opposite" from the place she got off. She was about two-thirds of the way across the northbound lane when she was struck by a northbound automobile proceeding past the bus, which remained standing at the east curb.

William D. Cowman, called by the plaintiff, testified that he was employed by Bendix Aviation Corporation on July 10, 1945. He reported for duty at the Towson plant around 8 A. M.; at 10 A. M. he was "proceeding north on Loch Raven Boulevard * * * to return an article which I had picked up at the stadium earlier that morning"; he had been sent to the stadium by his "supervisory officer," James L. Reid, earlier that morning; that it was "company business," Mr. Reid "asked him to do it on the company's business, not for him personally."

The plaintiff testified that she "stepped off the bus onto the pavement, and I looked to the left to see if anything was coming, and then as I started across, I got a little beyond the bus, and then is when I couldn't get out of the way of the car"; that she "had taken three or four steps past the corner of the bus," when she was struck; that "at the edge of the bus, that's the second time I looked," that she couldn't "recall seeing the machine" as she got to "the edge." She sustained a fractured humerus, bruises and contusions.

William P. Pittinger, the bus driver, called by the plaintiff, testified that he stopped the bus at the curb by the bus stop sign. He heard a horn blow, looked in his rear-vision mirror, and saw a car coming at the left rear end of his bus. At that instant, he saw the plaintiff step off the curb and run in front of the bus. He put his hand out the window to try to warn the driver, and yelled

to the plaintiff "wait, wait," when he saw her "dash down off the curb and start to run." He tried to "warn her" but she "ran out in front of it," and "it all happened at once." He was the first one to get to the place where the plaintiff was lying, about the middle of Marble Hall Road, after the accident.

Jefferson McCullum, a passenger on the bus, got off at the center door. He heard the squeal of brakes and saw the plaintiff "tossed"; she "rolled * * * something like 10 or 12 feet." The car stopped "up against the curb, near the grass." He took the license number of the car, but was not asked what the number was, or to identify the driver.

This is all the evidence bearing upon the issues of negligence or contributory negligence. Upon the first point, there is evidence that the automobile driver blew his horn, and no evidence that he was driving fast, or was inattentive. But on the other hand it is undisputed that he failed to stop or yield the right of way to the plaintiff. Section 181 of Article 66½ of the Code, as codified by Chapter 1007 of the Acts of 1943, provides:

"(Pedestrians' Right-of-Way at Crosswalks.) (a) All pedestrians shall have the right-of-way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic control devices. Between street crossings in such towns and cities, vehicles shall have the right-of-way. (b) Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at any intersection to permit a pedestrian to cross the roadway the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle." Section 181 (a) was contained in the preceding Motor Vehicle Law, Art. 56, Sec. 235, 1939 Code. Section 181 (b) was a new provision in 1943. Compare Section 38 of the Uniform Act Regulating Traffic on Highways.

The fact that Marble Hall Road does not cross Loch Raven Boulevard does not make it any the less a street crossing or intersection. *Vizzini v. Dopkin,* 176 Md. 639, 642, 6 A. 2d 637; *York Ice Machinery Co. v. Sachs,* 167

Md. 113, 121, 173 A. 240; *Buckey v. White,* 137 Md. 124, 111 A. 777. Compare *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349. See also Code, 1943 Supp., Art. 66½, Secs. 2 (9) and 2 (20). We think an inference may be properly drawn from the testimony that the plaintiff, proceeding from the front of the bus, standing at the "bus stop" sign, to the southwest corner of the intersection to the west, was on a crosswalk, although the latter was presumably unmarked. In this respect, the case of *Thompson v. Sun Cab Co.,* 170 Md. 299, 184 A. 576, is distinguishable. It should have been obvious to the automobile driver that the bus was stopped to discharge passengers, and that some of them might attempt to cross. It was his statutory duty to stop and yield the right of way. Failure to do so is at least some evidence of negligence.

Upon the issue of contributory negligence, there was evidence from which a jury might have found the plaintiff guilty of negligence. When she looked to her left before leaving the curb, she would have had a view of distant traffic, but not of traffic behind the bus. When she looked again at the left front of the bus, if she did, the automobile was indubitably there, and her testimony that she did not see it is not worthy of credence. Helms' Case, *Baltimore Traction Co. v. Helms,* 84 Md. 515, 36 A. 119, 36 L. R. A. 215; *Sullivan v. Smith,* 123 Md. 546, 556, 91 A. 456; *Gitomir v. United Rys.,* 157 Md. 464, 146 A. 279; *Storrs v. Hink,* 167 Md. 194, 207, 173 A. 66; *State, for Use of Parks v. Insley,* 181 Md. 347, 351, 29 A. 2d 904. If there were no question of right-of-way involved, or the automobile had had the right-of-way, she would have been barred by her action in leaving a place of safety. *State, for Use of Parks v. Insley, supra; Webb-Peploe v. Cooper,* 159 Md. 426, 151 A. 235; *Jendrzejewski v. Baker,* 182 Md. 41, 31 A. 2d 611; *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81.

But the concepts of negligence and contributory negligence are essentially relative, and it is only where the minds of reasonable men cannot differ that the court is justified in deciding the question as a matter of law. Even before the recent amendment of the statute, this

Court has held in a long line of cases that where the pedestrian has the right-of-way, contributory negligence is a matter for the jury to consider. *Brown v. Patterson,* 141 Md. 293, 118 A. 653; *Parr v. Peters,* 159 Md. 106, 150 A. 34; *Legum v. State, for Use of Moran,* 167 Md. 339, 173 A. 565; *Sheriff Motor Co. v. State, to Use of Parker,* 169 Md. 79, 83, 179 A. 508; *Vizzini v. Dopkin,* 176 Md. 639, 6 A. 2d 637; *Wintrobe v. Hart,* 178 Md. 289, 298, 13 A. 2d 365. In the recent case of *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517, we held that a jury case was presented where the pedestrian was struck upon a cross walk, and there was some evidence that the automobile was on the wrong side of the street. In the case at bar the statute not only gave the plaintiff the right-of-way, but imposed upon the driver of the automobile the duty not to overtake and pass a vehicle stopped to permit pedestrians to cross. If this statute does not apply to buses, it would be meaningless. Street cars are excluded from the term "vehicles" by definition. Code, Art. 66½, Sec. 2 (65). We think a jury might properly find that the plaintiff was justified in believing that any car so close to the bus that she could not see it, would have come to a stop. We cannot hold as a matter of law that she was obliged to anticipate that the driver would violate the law as to passing, or fail to yield the right of way under the circumstances.

This brings us to the ultimate question in the case. The Maryland cases seem to hold that it is entirely within the discretion of the trial court whether a case may be reopened to permit additional testimony, and "from its action in granting or rejecting the application no appeal will lie." *Poe, Practice,* 5th Ed., Sec. 288A, and cases cited. In *East Baltimore Transfer Co. v. Goeb,* 140 Md. 534, 537, 118 A. 74, the Court's action in allowing a case to be reopened, to identify the driver of the truck causing the accident, was sustained. Compare *Dailey v. Grimes,* 27 Md. 440, 447. But on the other hand, refusals to reopen have likewise been sustained, with the assertion that no appeal will lie. *Niemoth v. State,* 160 Md. 544, 554, 154 A. 66, and cases there cited.

The rule in equity appears to be more liberal. *Bradford v. Eutaw Savings Bank,* 186 Md. 127, 46 A. 2d 284, and cases cited. Compare *Dougherty v. Dougherty,* 187 Md. 21, 48 A. 2d 451, 455. In other jurisdictions, courts have dealt with refusals, under similar circumstances, as abuses of discretion. *Penn v. Georgia So. & Fla. Ry. Co.,* 129 Ga. 856, 60 S. E. 172; *Wickham v. Torley,* 136 Ga. 594, 71 S. E. 881, 36 L. R. A., N. S., 57; *Bowers v. Fred W. Amend Co.,* 72 Ga. App. 714, 35 S. E. 2d 15; *Virginia Ry. & Power Co. v. Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838. This Court has repeatedly held that the action of a trial court in granting or refusing a motion for a new trial is not appealable. *Snyder v. Cearfoss,* 186 Md. 360, 46 A. 2d 607, 610, and cases cited.

In the view we take of the instant case, it is unnecessary to decide whether the rule of discretion could admit of any exception, because we think there was enough in the case to require its submission to the jury. The declaration alleged that Reid was the owner of the car involved in the accident, and that Cowman was driving it on the business of Bendix. In *Finney v. Frevel,* 183 Md. 355, 359, 37 A. 2d 923, 925, this Court said: "As to the negligence of Karl L. Frevel, there was no evidence offered that he was either the driver or owner of the car in collision with the station wagon. Ownership and operation of the car, however, are alleged in the declaration to be in Frevel. As the ownership was not denied by him in the next succeeding pleading, for the purpose of this case, ownership is admitted in him. Flack's Code (1939), Article 75, Section 28, Subsection 109. Ownership being thus established, a *prima facie* presumption arises that the operator of the vehicle was the servant and agent of the owner. *Pennsylvania R. Co. v. Lord,* 159 Md. 518, 526, 151 A. 400; *Gutheridge v. Gorsuch,* 177 Md. 109, 114, 115, 8 A. 2d 885. A reasonable presumption also arises that the servant and agent was acting in the scope of his employment and upon the business of the master and this presumption exists until rebutted. *Erdman v. Horkheimer & Co. [to Use of World*

*Fire & Marine Ins. Co.*], 169 Md. 204, 181 A. 221; *Phipps v. Milligan,* 174 Md. 438, 199 A. 498; *Gutheridge v. Gorsuch, supra.*"

In addition to the presumptions raised by the pleadings, Cowman testified that he was "proceeding" north on Loch Raven Boulevard at the time of the accident, taking an "article" to the Bendix plant, upon the business of Bendix, and upon the express order of his superior, Reid, the admitted owner of the car. We think it may be inferred from the pleadings and testimony that Reid's car struck the plaintiff, and that Cowman was operating it, at Reid's direction, upon the business of Bendix. There was no real issue in the case as to whether Cowman was driving the car that struck the plaintiff. There was no testimony that any other automobile was present at the scene of the accident. Neither in the court below, nor in this Court, did the defendant suggest that issue as one of their defenses. The record shows that at the beginning of the trial an opening statement was made on behalf of Cowman and Reid. Unfortunately, this statement is not in the record, and we cannot speculate as to whether the fact was admitted, but it is significant that the motions for directed verdicts, required by the Rules of Practice and Procedure, Part 3, Subd. III, Trials, Rule 4, to "state the grounds therefor," did not specify this as one of the grounds, and we think it may properly be treated as a concessum in the in the case.

> *Judgment reversed as to Bendix and Cowman, with costs, and new trial awarded; judgment affirmed as to Reid, with costs.*