STATE OF MARYLAND for the use of Ruby SCOTT, Widow of Charles Glynn Scott, deceased, Scherry Lynn Scott, infant, and Charles Glynn Scott, Jr., infant, and Vivian V. Simpson, Administratrix of the Estate of Charles Glynn Scott, deceased, Plaintiffs,

and

Vivian V. Simpson, Administratrix, of the estate of Charles Glynn Scott, deceased, to the use of American Casualty Company of Reading, Pennsylvania, Intervenor,

v.

Johnny TAYLOR, Jr., Defendant, and Return Loads Bureau, Inc., Defendant and Third-Party Plaintiff,

Chevy Chase Transfer & Storage Co., Inc., a Delaware Corporation, Third-Party Defendant.

Civ. A. No. 6504.

United States District Court
D. Maryland.

May 15, 1956.

Foster H. Fanseen, Baltimore, Md., for intervenor.

John J. Ghingher, Jr., Weinberg & Green, Baltimore, Md., for Return Loads Bureau, Inc.

CHESNUT, District Judge.

The motion for judgment n. o. v. or for a new trial, in the above case is based principally, if not wholly, upon alleged trial error in the admission of statements of the driver of the vehicle of the alleged tort-feasor, to a police officer in-

vestigating the cause of the accidental injury and death of the motorist. But the circumstances preceding and attending the trial of the particular case present some unusual features. It will be helpfully explanatory, therefore, to refer to the prior pleadings and procedure in the whole case.

The suit was originally filed in the Circuit Court for Montgomery County, a Maryland State Court, and on April 8, 1953 was removed to this court on the ground of diversity of citizenship between the original parties to the case. The subject matter involved in the case was an automobile collision about midnight on August 8, 1952 on a Maryland State highway known as East-West Highway in Prince Georges County, in the State of Maryland, only a short distance from the District of Columbia Line. The collision was between a passenger automobile driven by Charles Glynn Scott and a tractor-trailer automobile belonging to the Return Loads Bureau, Inc., and driven by Johnny Taylor. As a result of the collision Scott was killed and his passenger in the automobile was badly injured.

The original parties to the suit were the State of Maryland, for the use of Ruby Scott, widow of Charles Glynn Scott, and two infant children; and another plaintiff was Vivian V. Simpson as administratrix of the estate of Charles Glynn Scott, deceased. The original defendants were Johnny Taylor and Return Loads Bureau, Inc. Thereafter at the instance of the Return Loads Bureau, Inc., a third-party complaint was filed against the Chevy Chase Transfer & Storage Co., Inc. In the original complaint the plaintiffs alleged that at the time of the collision Johnny Taylor, the driver of the tractor-trailer, was the agent and servant of Return Loads Bureau, Inc., and that it was his negligence in the management and operation of the tractor-trailer that was the cause of the collision. In the third-party complaint against the third-party defendant it was alleged that Taylor was acting as the agent of the Chevy Chase Company.

The cause of the collision was alleged to have been that Taylor had left the tractor-trailer unattended for a time without complying with the requirements of the Maryland statute to the effect that flare lights must be placed at the rear of the truck during the nighttime when it was stopped on the public highway.

Nothing of importance transpired in the case after its removal to this court until November 5, 1954 when the American Casualty Company of Reading, Pennsylvania, filed a petition for leave to intervene as a plaintiff on the ground that it had paid collision damage in the amount of $1,200 for damage to Scott's automobile. This motion was resisted by Return Loads Bureau, Inc., apparently only on the ground that the amount of the intervening claim was less than $3,000. In the original complaint the amount in controversy was alleged to be $100,000. A hearing on the motion for intervention and the opposition thereto occurred before Judge Thomsen on December 10, 1954; and on March 28, 1955 the intervention was allowed.

The next proceeding was that the case was assigned for trial and came on to be heard on April 5, 1956. It appears that the original plaintiffs had not asked to have the case set for trial; and when the case was called and counsel were asked if they were ready for trial, a jury panel being present for the selection of twelve jurors, counsel for the defendant filed an order of dismissal signed by the original plaintiffs and counsel for the defendant, which read briefly: "Mr. Clerk: You will please enter the above entitled case 'dismissed with prejudice'"; and at the same time counsel for the defendant filed a written motion to dismiss the intervening complaint of the American Casualty Company on the ground that its complaint "does not assert an independent ground of jurisdiction in that the claim and demand made therein is in the amount of $1200", this being the same ground urged in opposition to the motion for intervention which, as above noted, had been previ-

ously filed by the defendant on November 5, 1954 and overruled in the order of Judge Thomsen allowing the intervention on March 28, 1954 (presumably 1955 intended). On inquiry from counsel for the intervenor and the defendant who were present at bar at the time, it was stated by counsel for the intervenor, without denial by counsel for the defendant, that some time before (just when, not stated) the original plaintiffs and the defendant had agreed upon a settlement of the case as between them but not including any provision for disposition of the claim of the intervenor. On these facts I overruled the motion to dismiss the claim for intervention because the original jurisdiction of the court had clearly attached on the removal of the case from the state court to this court. And it was my opinion that the original plaintiffs and the defendant could not properly defeat the jurisdiction with respect to the previously allowed claim for intervention, to the prejudice of the latter. The case then proceeded, after impanelling the jury, on the claim of the intervenor.

At the trial it was stipulated between counsel that the fair value of Scott's automobile or rather the damage thereto as a result of the collision was $1,015. The facts with respect to the time, place and circumstances of the collision were narrated by verbal testimony of one Haislip, an experienced police officer of Prince Georges County. He testified in substance that he received a call to go to the scene of the collision at 11:15 P. M., August 8, 1952, and arrived there a few minutes later. He found the defendant's tractor-trailer on the brink of a small hill on the East-West Highway parked on the west-bound lane facing toward Washington, without lights of any kind and with no flares set out in the rear of the tractor-trailer which was a very large tractor coupled to a large trailer van for the transportation of furniture. When the officer arrived the driver of the tractor-trailer was standing behind the trailer. The Scott passenger automobile was also just behind or in virtual contact with the rear of the trailer. The front of the passenger automobile was badly damaged. The body of Scott was lying on the ground near the car and Scott's passenger, one Olnick, was inside the car badly injured. About the same time that the officer arrived an ambulance, which had been summoned, also arrived and took Scott and Olnick to the hospital.

The officer at once put out the flares behind the tractor-trailer as required by the Maryland statute, and then attempted to start the vehicle by getting into the cab, but found that it would not start. He did find that the electric lights of the tractor were in working order. The officer had gotten the flares used by him from his own car but later found that the tractor-trailer was itself provided with the regulation flares which, however, had not been used. He also obtained from the cab of the tractor the motor registration certificate for the tractor and the trailer separately and found that the authorized license plates corresponded with those upon the tractor-trailer. The registration certificate showed the tractor-trailer was registered to the defendant, Return Loads Bureau, Inc. The officer then made inquiries from the driver as to why the tractor-trailer was parked without lights and without flares. In this connection reference should be made to the Maryland statutory law, Maryland Code, 1951, Art. 66½, § 165, which reads as follows:

"(Duty to Give Information and Render Aid.) The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or trackless trolley which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request exhibit his operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable as-

sistance, including the carrying or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

Section 263 of Art. 66½ provides at some length and in some detail in substance that such tractor-trailer as that here involved must be provided with flares or artificial lights and when parked at night time on rural roads must use the flares or lights to warn approaching traffic.

The driver, Johnny Taylor, told the officer that he had run out of gas at the top of the hill and had then turned off the lights of the tractor-trailer and proceeded to walk a short distance to the west leaving the tractor-trailer, to get some gasoline from a nearby filling station, which, however, he found closed at that time of the night, and that he immediately returned to the tractor-trailer and was there when the officer arrived. Evidently in the meantime the Scott car also heading west on the right-hand side of the center line, collided with the rear end of the tractor-trailer. The officer then put the driver in the officer's automobile and took him to the police station. He had much more conversation with the driver during the period exceeding half an hour but defendant's counsel objected to such statements by the driver and the objections were sustained.

■ Counsel for the defendant also objected to the replies made by the driver giving information as to how and why the tractor-trailer had been parked where it was without lights of any kind, and moved to strike out the answers on the ground that they were hearsay and not part of the res gestae. However the court admitted the statements made by the driver to the extent above stated. It will be noted that in addition to the factual situation as seen and described by the officer on his personal observation,

the only relevant statement made by the driver was to the effect that he had temporarily left the tractor-trailer to get some gasoline because he had run out of gasoline. It was my opinion at the trial that this statement of the driver was not very material in view of the factual information which had been related on the personal observation of the police officer. The defendant's objection to the driver's statement is substantially the only point urged on the motion for a new trial. Assuming that the driver's statement was not a part of the res gestae, I think, in view of the Maryland statute above quoted, the information obtained by the officer was admissible in evidence in connection with his personal observation of the situation. The negligence consisted in leaving the tractor-trailer unattended without the statutorily required lights and flares; and the reason given by the driver that he had run out of gasoline and gone away to get some was merely explanatory and not in itself necessary to show the existence of the negligence. Cases are cited principally from other jurisdictions than Maryland or federal courts to the effect that statements of a purported agent or servant are not admissible to bind his principal in the absence of preliminary affirmative proof of his authority. However, I do not think that this general rule of evidence is applicable to the present situation. The answers of the driver which were allowed in evidence were strictly limited to his statement with respect to how and why he had allowed the tractor-trailer to be parked without warning lights. It is true that the defendant's answer to the original complaint had denied the agency of Johnny Taylor as its driver, on the ground stated in the third-party complaint against the Chevy Chase Transfer & Storage Co., that Taylor was really acting as agent for the Chevy Chase Company. Apparently there was no other evidence than that of the police officer available to the intervenor, as counsel for it stated without contradiction that (1) the original plaintiffs had not secured effective serv-

ice on Taylor as a co-defendant and (2) counsel for the intervenor had not been able to learn the address and had also failed to learn the address of the passenger in Scott's automobile, although it would not seem that the latter could have furnished any information on the point of Taylor's agency. Nor was there any evidence offered by counsel for the defendant upon the subject, as he, upon inquiry from the court, stated that he had summoned no witnesses because he felt the intervenor would not be able to make out a prima facie case. While I appreciate the basis for the general rule that statements of an agent do not bind the principal until there is proof of agency, it seems to me that it would be a too highly technical application of that rule to warrant the exclusion of the very limited statements of the driver in this case.

 Under the circumstances there was at least sufficient prima facie evidence to show that Taylor was the driver of the tractor-trailer, and indeed I understood defendant's counsel not to dispute this. Under the Maryland rule, there is a prima facie presumption that the driver of a defendant's automobile on a Maryland highway is to be taken as the agent and servant of the defendant, unless there is contrary evidence to rebut the presumption. Wagner v. Page, 1941, 179 Md. 465, 20 A.2d 164, stating the effect of many other Maryland cases there cited. See also National Trucking & Storage, Inc., v. Durkin, 1944, 183 Md. 584, 39 A.2d 687.

At the conclusion of all the evidence counsel for the defendant requested a mandatory instruction to the jury to find for the defendant. This was overruled. In the charge the jury was instructed as usual with regard to the rules of law applicable to a case of this character, including, of course, the requirement that the intervening plaintiff must satisfy the jury by a preponderance of evidence that the damage to the Scott automobile was proximately due to the negligence of the defendant or its driver in charge of its tractor-trailer. The jury were also instructed that if the collision was due in part to the contributory negligence of Scott, the jury should find a verdict for the defendant. Counsel's argument to the jury on this point was based on the statement by the officer that he had detected some odor of alcohol on Scott at the time, and the expert opinion of a witness as to degrees of intoxication based on a post mortem sample of spinal fluid taken from the body of Scott.

There were no exceptions by counsel for the defendant to the charge in this case other than to the refusal to direct a verdict for the defendant. The jury found a verdict for the intervening plaintiff in the amount of $1,015.

█ Although no point was made by counsel for the defendant in this case with respect to the procedure, other than what has been mentioned, I have given some consideration to the question of whether the intervenor as subrogee of the administratrix of Scott's estate was entitled to sue for its own account to obtain damages from the defendant on account of the damage to the Scott automobile. I have concluded that although the situation which developed in this case is somewhat unusual, the procedure was at least substantially correct. The motion for intervention was seasonably made while the court had full and undoubted jurisdiction of the issues raised in the main case. While opposed, it was duly considered and the objections were overruled and the intervention allowed by written order nearly a year before the actual trial of the case. In the meantime and before the actual trial of the intervention it appears that the original parties without consulting the intervenor had agreed to settle the case between themselves, and only on the morning of the trial filed a simple order of "dismissal with prejudice". Without questioning or adversely criticizing the rights of the original parties to so dispose of their litigation I do not think that the effect thereof was to require a dismissal of the intervention which had been previously properly allowed under rule 24 F.R.C.P. Possibly, or even probably, the intervenor as subrogee might

have been able to recover directly from the plaintiffs to the extent of their recovery (amount not definitely stated) without intervening in the suit, but I do not think the intervenor was obliged to pursue that form of possible redress because it had duly presented its claim in a proper case before the dismissal by the original plaintiffs, and agreed to by the defendant. The plaintiffs had apparently abandoned the suit without consulting the intervenor. This left the intervenor free to proceed as best it could to prove its claim in the case still pending as to its claim. To hold otherwise would unduly prejudice the rights of the intervenor.

As to the right of a subrogee to sue directly in its own name when it has paid the full loss to its insured, or in the name of the insured to the use of the subrogee when a part only of the loss has been paid, see United States v. Aetna Casualty & Surety Co., 1949, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171; and rule 17(a), Fed.Rules Civ.Proc. 28 U.S. C.A.

The motions for judgment n. o. v. or for a new trial in the alternative, are both overruled.